**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN KING, ET AL., | No. 20-cv-4322-LGS |
| Plaintiffs, | Lead Case |
| v. | |
| HABIB BANK LIMITED, | |
| Defendant. | |
| KATHLEEN L. ALEXANDER, ET AL., | No. 21-2351 (LGS) |
| Plaintiffs, | |
| v. | |
| HABIB BANK LIMITED, | |
| Defendant. | |
| MARY BORDER, ET AL., | No. 21-6044 (LGS) |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| HABIB BANK LIMITED, | |
| Defendant. | |

## STIPULATED PROTOCOL REGARDING DISCOVERY

Plaintiffs and Defendant Habib Bank Limited in the above-captioned cases (collectively, the "Parties") by and through their undersigned counsel hereby enter the following Stipulation regarding certain discovery-related matters.

## I.   GENERAL PROVISIONS

(a) <u>Scope</u>. This Stipulation shall govern discovery in this action as a supplement to the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules of the Southern District of New York ("Local Rules"), the Individual Rules and Procedures of this Court ("Individual Rules"), and any other applicable orders and rules. Nothing in this Stipulation is intended to be exhaustive of the discovery obligations or rights of the Parties in this action.

(b) <u>Limitations</u>. This Stipulation does not waive any privileges, protections, or immunities arising under any applicable laws, including the attorney-client privilege, the work product doctrine, the bank examination privilege, the suspicious activity report ("SAR") privilege, the data privacy and bank secrecy obligations under U.S. and Pakistani law, or any other exemption from discovery. The Parties preserve all such privileges, protections, and immunities and reserve the right to object to any discovery on any grounds. Nothing in this Stipulation shall be construed to affect the admissibility of discovery, and all objections to admissibility are preserved.

(c) <u>Modification</u>. Any practice or procedure herein may be varied by agreement of the Parties, where such variance is appropriate to facilitate the timely and economical exchange of Documents and is confirmed in writing by the Parties. Any party added or joined to this action and any party to actions that may be consolidated with the above-captioned cases after the date of this Stipulation will be expected to either agree to abide by the terms of this Stipulation or otherwise promptly meet and confer with the Parties regarding entry of a similar protocol.

(d) <u>Service</u>. The Parties agree that service pursuant to Rule 5 of the Federal Rules may be made by electronic mail on all counsel of record in this matter, including the service of any production of documents, discovery requests and responses, sealed filings, or notices of deposition.

## II.   DEFINITIONS

(a) <u>Document</u>: Synonymous in meaning and equal in scope to the usage of this term in Rule 26.3(c)(2) of the Local Rules and Rule 34(a)(1)(A) of the Federal Rules and encompasses both electronically stored information ("ESI") and hard-copy documents.

(b) <u>E-mail</u>: Electronic communication sent or received via messaging applications, including Microsoft Outlook, Google Gmail, or Lotus Notes.

(c) <u>ESI</u>: Abbreviation of "electronically stored information" that is synonymous in meaning and equal in scope to the usage of the term in Federal Rule 34(a)(1)(A).

(d) <u>Extracted Text</u>: Text extracted from a Native Format file that includes, at a minimum, all header, footer, and body information, and any hidden text.

(e) <u>Instant Message</u>: Real-time communication sent via chat or SMS, including Bloomberg Chat, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Audium, Trillian, or any other proprietary instant messaging system.

(f) <u>Metadata</u>: Structured information about ESI that is created by the file system or application, embedded in the Document, and sometimes modified through ordinary business use. Metadata describes, *inter alia*, the characteristics and origins of the ESI and, as relevant to this Stipulation, includes each of the data fields set forth in **Exhibit A**.

(g) <u>Native Format</u>: The format of ESI in the application in which such ESI was originally created.

(h) <u>Party</u>: Any party to this action, including all of its officers, directors, agents, consultants, and employees.

(i) <u>PII</u>: Abbreviation for "Personal Identifiable Information" and encompasses each of the categories of information set forth in the Parties' Protective Order (Dkt. 75) at ¶ 11.

(j) <u>Producing Party</u>: Any Party (or third party who agrees to the terms of this Stipulation) who produces Documents in this action.

(k) <u>Receiving Party</u>: Any Party to whom Documents are produced in this action.

## III.   IDENTIFICATION, COLLECTION, AND PRESERVATION OF DOCUMENTS

(a) <u>Preservation</u>. Pursuant to § II.A.4 of the Court's Individuals Rules, the Parties agree to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control. The Parties further agree as follows:

     i.   Absent a showing of good cause, the Parties are not required to modify the procedures they use in the ordinary course of business to back-up and archive data; provided, however, that the Parties preserve all discoverable ESI in their possession, custody, or control.

    ii.   The Parties will supplement their production of ESI if they learn that in some material respect their production is incomplete or incorrect and the additional or corrective information has not been made known to the other Parties.

(b) <u>Custodians</u>. The Parties agree to identify all custodians from whom they search and produce information no later than 10 days after the substantial completion deadline. The Parties agree to meet and confer about custodians in accord with the Court's Individual Rule II(A)(1) and to bring any related dispute before the Court in the manner provided in § III.C.3 of the Court's Individual Rules.

(c) <u>Use of Search Terms</u>. In accord with the Court's Individual Rule II.A.d, the Producing Party "shall be able to demonstrate that the search was effectively designed and efficiently conducted." The Producing Party will provide the Receiving Party a list of the search terms used

to filter and/or select the Documents for production no later than 10 days after the substantial completion deadline for the production.

(d) <u>Technology Assisted Review</u>: To the extent that the Parties rely on Technology Assisted Review ("TAR") in the search for, collection and review of ESI, the Parties shall confer consistent with the Court's Individual Rule II.A.3 regarding search methodology and criteria "to achieve proportionality in ESI discovery", and "also shall discuss whether to use computer-assisted search methodology to facilitate pre-production review of ESI to identify information that is beyond the scope of discovery because it is attorney-client privileged or work product protected."

The Parties shall have an opportunity to propose additional terms and/or custodians in accord with the Court's Individual Rules regarding custodians and search terms. The requesting Party may bring any dispute before the Court in the manner provided in the Court's Individual Rule III.C.3. In any event, the Parties agree that the use of search terms, if any, is not intended to limit the scope of any particular Request.

## IV.    PRODUCTION OF DOCUMENTS

The Parties shall produce Documents in this action according to the specifications provided below and set forth in further detail in **Exhibit A** to the extent reasonably feasible.

(a) <u>Format of ESI Productions</u>. The Parties agree that all Documents originally maintained in electronic format and collected for this action are to be produced in an "imaged" file format and according to the following provisions:

  i.   <u>Imaged Files</u>: The Documents will be produced in Single Page TIFF format (i.e., one file for each page of a Document) with an image resolution of at least 300 DPI. Each page will be branded with a Bates Number and any confidentiality designations (*see* § IV(e), below). If any Party deems the quality of the Document

produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must also produce the Document in Native Format (*see* § IV(a)(ii), below) or any other format necessary to access and review the Document. To the extent a Party believes a Document is not adequately represented in an image file format, the Party may request that the Producing Party produce the Document in Native Format, the production of which may not be unreasonably withheld. If the underlying native file has color, the Requesting Party may request that the Producing Party provide it with a copy of the TIFF image in color.  Microsoft PowerPoint documents will be produced in TIFF image format and will include notes and comments sections of any such document.

ii.  <u>Natives</u>: Microsoft Access files, Microsoft Excel files, .CSV files, other similar database and spreadsheet files, and any files that cannot be rendered in a readable TIFF format shall be produced in Native Format with a placeholder TIFF image. Each placeholder TIFF image will contain language in no less than 10-point font indicating that the Document is being produced in Native Format, the Document's Bates Number, and any confidentiality designations (*see* § IV(e), below). A relative file path to the Native Format file for Documents produced in Native Format shall be provided in the Load File. If a Document to be produced in Native Format contains privileged or otherwise withheld information, the Document will be produced in TIFF format with redactions, to the extent reasonably and technically possible. Excel spreadsheets may be redacted in Native Format only

if the Producing Party maintains an unaltered copy of the original version of the Excel spreadsheet.

iii. <u>Image Load Files</u>: Each production will include the image Load Files described further in **Exhibit A**.

iv. <u>Metadata</u>: Each production will include for each produced Document all of the Metadata fields set forth in **Exhibit A**, to the extent such Metadata exists for the produced Documents.

v. <u>OCR and Extracted Text File</u>: Each production will include for each produced Document an Extracted Text file containing the produced Document's contents. If the Document is redacted or an Extracted Text File is unavailable, OCR will be taken of the redacted Document. To the extent producing an OCR and/or Extracted Text file presents an undue burden to a Party, that Party shall promptly notify all Parties, and the Parties shall meet and confer in an effort to reach a mutually agreeable solution.

(b) <u>Format of Hard Copy Document (i.e., non-ESI) and Static Image Productions</u>. The following applies to (1) Documents that exist only in hard-copy format; and (2) Documents that exist only in static image file format. All Documents subject to this category that are amenable to being imaged should be produced in the same format specified in § IV(a) above, except that the necessary Metadata fields are limited to BegBates, EndBates, BegAttach, EndAttach, Custodian, Confidentiality, TextPath, and Redacted. OCR will also be provided, if reasonably available. *See supra*, § IV(a)(v).

All Documents that contain Post-it style notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again

without it, and made part of the same Document. Distinct Documents should not be merged into a single file, and single Documents should not be split into multiple records (i.e., paper Documents should be logically unitized). In the case of an organized compilation of separate Documents (e.g., a binder containing several separate Documents behind numbered tabs), the physical organizational divider, any labels, and the Documents that follow should also be scanned, and the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

(c) <u>Format of Documents and Information from Structured Data or Databases</u>. The Producing Party will produce data exported from databases in Excel format, or, if Excel format is not possible, in a .CSV file or PDF report format and subject to the same requirements in § IV(a). If data from databases or other structured data sources cannot be produced in Excel, .CSV, or PDF report formats, the Producing Party will promptly notify all Parties and meet and confer to determine a reasonable formant in which such Documents may be produced.

(d) <u>Format of Previously Made Productions</u>. The following applies to Documents that were collected and produced as part of other cases or investigations that pre-date this action and for which the production data and format identified in § IV(a) is unavailable and/or infeasible. To the extent any Party agrees to produce such Documents, they may be produced in the format they were originally produced, unless that format would be unreasonable and/or unworkable. To the extent the Parties disagree regarding the format of such productions, the Parties agree to meet and confer in good faith to determine a reasonable format in which the Documents may be produced.

(e) <u>Bates Numbers and Confidentiality Designations</u>. Each page of a Document produced in TIFF format, and each TIFF placeholder for a Document Produced in Native Format, shall have a legible and unique fixed-length numeric identifier (i.e., "Bates Number") containing at least eight

(8) digits and identifying the Producing Party (e.g., "KINGHBL00000001") electronically "burned" onto the image in no less than 10-point font. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right-hand corner of each page. And unless it would obscure, conceal, or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Protective Order (Dkt. 75) will appear on the lower left-hand side of each page, also in no less than 10-point font.

(f) <u>De-Duplication and Threading</u>. The Parties may remove exact duplicate Documents (i.e., identical copies of the same Document), including, but not limited to, E-mail, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. ESI that is not an exact duplicate[1] may not be removed. If a Party chooses to remove exact duplicate Documents, that Party

    i.  will perform de-duplication according to the MD5/SHA-1 hashing method and identify the custodians of de-duplicated Documents as part of the Metadata fields set forth in **Exhibit A;**

  ii.  will perform de-duplication only at the Document family level[2] so that attachments are not de-duplicated against identical stand-alone versions of such

---

[1] An E-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an E-mail that does not include identical content in the BCC or other blind copy field, even if all remaining content in the E-mail is identical.

[2] Unless otherwise agreed upon by the Parties, a family can be removed through de-duplication only if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family. For example, if there is a two-member family with a parent and an attachment, the MD5 hashcodes of the parent must be identical and the MD5 hashcodes of the attachments must also be identical. If a Party deduplicates globally, the Party shall, if reasonably feasible, identify the de-duplication priority order at the request of any other Party.

Documents and vice versa, although each family member shall be hashed separately for purposes of populating the "HashValue" field in **Exhibit A**;

iii.   will *not* disassociate attachments to E-mails, Instant Messages, or other Documents from the parent E-mail, Instant Message, or Document, even if they are exact duplicates of another Document in the production; and,

iv.   will *not* eliminate paper Documents as duplicates of responsive ESI.

(g) <u>Encryption</u>. The Parties will make reasonable proportional efforts to ensure that all encrypted or password-protected Documents are successfully processed for production under the requirements of this Stipulation, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Stipulation, the Parties have no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed despite use of reasonable efforts, if a family member of such a Document is a Responsive Document, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed. Upon request from the Receiving Party, the Parties shall meet and confer in good faith to resolve any disputes over such Documents.

(h) <u>Redaction of PII and Privileged Information</u>. A Producing Party may choose to redact PII or privileged information. If a Producing Party chooses to redact such content, the Producing Party must either list the basis for the redaction on the face of the Document (e.g., "WP" for Work Product, "AC" for Attorney-Client, or "PII" for Personal Identifiable Information) or log the Document pursuant to § V, below. In any event, names and email addresses will not be redacted pursuant to this paragraph.

**V.    REDACTED OR WITHHELD MATERIALS**

(a) <u>General</u>. The Parties recognize that some Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, privacy, or other applicable privilege or immunity from disclosure (collectively, "privilege") and agree to abide by the following provisions regarding the logging of such redacted or withheld materials. These provisions are in addition to those set forth in Federal Rule of Civil Procedure 26 and Local Rule 26.2.

(b) <u>Exchange of Privilege and Redaction Logs</u>. The Parties agree that privilege and redaction logs will be exchanged within forty (40) days of the deadline to substantially complete document productions for a particular request, absent further agreement by the Parties. Notwithstanding the preceding sentence, all privilege and/or redaction logs will be served no later than fourteen (14) business days before the close of fact discovery.

(c) <u>Exempt from Logging</u>. The Parties agree to forego logging (1) privileged material created by, or communications with, counsel representing the party in this action (or their staff) at any point in time; (2) litigation hold and/or retention instructions issued based on this action; and (3) Documents produced in this action that are redacted for privilege and that include on the face of the Document the basis for the redaction (*see* § IV(h), above).

(d) <u>Contents of Log</u>. For each Responsive Document redacted or withheld because of privilege, the Parties will provide the following information to the extent possible without violating privilege or immunity protections:

    i. Custodian;

    ii. Date, per the Document's Metadata;

    iii. Author, Sender, and/or Recipient(s) (To, CC(s), BCC(s)), and an identification of which individuals (if any) are counsel;

    iv.   General description of the nature and subject matter of the Document;

    v.   Bates Number (in the case of redacted Documents that are logged);

    vi.   Identification of the privilege claimed; and

    vii.   Description of the basis for the privilege claim.

Consistent with Local Rule 26.2(c), the Producing Party may provide this information in a categorical format only if that format provides the Receiving Party with sufficient substantive information to ascertain the basis for the assertion of privilege and to identify all third parties on any communications involving counsel. If a Receiving Party requires further information to evaluate a claim of privilege, it shall explain in writing the need for such information and identify, by Bates Number or other unique identifier, each Document for which it seeks this information. Such information, once requested, shall not be unreasonably withheld.

    (e) <u>Logging Email Communications</u>. When the logged Document is an E-mail thread containing more than one E-mail and the individuals in the Sender and Recipient (including CC and BCC) fields are identical throughout the entire thread, it may be logged as one entry in which the Date field for the entry is based on the date in the top line E-mail. If an E-mail thread includes different Senders and Recipients in different E-mails within the thread, the E-mail still may be logged as a single entry, but all Senders and Recipients in the thread must be identified in the entry. Further, if any portion of the E-mail thread is responsive and not privileged, the thread must be redacted and produced.

    (f) <u>Privilege Disputes</u>. If any dispute arises concerning a Party's privilege or redaction log, or claim of privilege, the Parties shall meet and confer in good faith in an effort to resolve the dispute without motion practice. If the Parties cannot agree, the challenging Party may bring the dispute before the Court in the manner provided in § III.C.3 of the Court's Individual Rules.

## VI.    DEPOSITIONS, GENERALLY

(a) Remote Depositions. The Parties agree to make reasonable efforts to offer witnesses for deposition remotely via a videoconferencing platform, particularly for witnesses located outside the United States. *See* Local Rule 30.2 ("The motion of a party to take the deposition of an adverse Party by telephone or other remote means will presumptively be granted."). In any event, a Party is not obligated to take any deposition remotely. For any deposition conducted remotely, the Parties agree to abide by the protocols set forth *infra*, in § VII.

(b) Notice. The decision to take a deposition remotely shall, subject to the terms of this protocol, belong to the Party noticing the deposition. A Party may elect to conduct a deposition remotely for any reason but must provide notice of this decision to the defending Party at least fourteen (14) days in advance of the deposition, unless the defending Party agrees to waive this requirement for that deposition. If a Party notices a deposition to occur in person, but another Party believes circumstances warrant taking the deposition remotely, or vice versa, the Parties shall confer in good faith to resolve the issue.

(c) International Witnesses. To the extent any deposition of a Pakistani national needs to occur in person, the Parties agree to take such depositions in London, England, unless the deponent is unable to obtain a visa or similar documents permitting the witness to travel to the United Kingdom.  The Parties will make reasonable efforts to group any such depositions in a manner that avoids serial travel. To the extent any deposition of other individuals located outside the United States needs to occur in person, the Parties agree to negotiate in good faith on a reasonable location for the deposition.

(d) Expenses. The Parties agree to waive their right to seek expenses under Local Rule 30.1 for depositions taken more than one hundred (100) miles from the courthouse except insofar as a

Party contends that the deposition was scheduled, conducted and/or canceled in bad faith or in contravention of the Court's Individual Rules or the Local or Federal Rules of Civil Procedure and the Federal Rules of Evidence.

(e) Exhibit Numbering. The Parties agree that deposition exhibits will be numbered sequentially starting at "1" preceded by the witness' last name or some other description (e.g., "Jones-1", "HBL 30(b)(6)-8").

## VII.   REMOTE DEPOSITIONS

(a) General. The following provisions (hereafter, "Remote Deposition Protocol") will govern the taking of depositions via remote means in the above-captioned matter. The Parties may agree to modify the Remote Deposition Protocol to accommodate the needs of a particular deponent or to resolve any issues regarding a particular deposition. Such modifications may be agreed in writing and/or memorialized on the record at the deposition.

(b) Applicability to Non-Parties. The Parties agree not to oppose the use of the Remote Deposition Protocol in depositions of non-parties and shall meet and confer in good faith regarding any modifications requested by such non-parties. The Parties further agree that all notices of non-party remote depositions shall include a copy of the Remote Deposition Protocol.

(c) Use of Remote Testimony. Testimony provided in remote depositions may be used in this action with the same force and effect as testimony provided in an in-person deposition. The Parties agree not to object to the use of the remote deposition testimony or video recording on the basis that the deposition was taken and recorded remotely. The Parties reserve the right to raise all other available objections to the use of the deposition testimony in this action.

(d) Court Reporting Service. The court reporting service used to record the remote deposition ("Designated Court Reporting Service") will be the host of the videoconference for

each remote deposition. It will be the responsibility of the Party noticing the deposition to ensure that the Designated Court Reporting Service is aware of, capable of complying with, and agrees to comply with the Remote Deposition Protocol. The Parties waive any objection to the deposition based on the fact that the court reporter is not physically present with the deponent. The Parties further waive any objection to the qualifications of the court reporter before whom the deposition is taken, so long as the court reporter is qualified to administer the oath and record depositions in the jurisdiction in which they are physically located during the remote deposition.

(e) <u>Recording Platform & Technology</u>. All depositions taken remotely in this action shall be conducted using videoconference technology, and all deponents shall be recorded by both stenographic means and video recording. The Parties further agree:

    i.   Any remote deposition shall use a videoconference platform and/or system(s) that can provide high-quality and reliable video and audio streaming to all participants.

    ii.   If a Party raises concerns with the videoconference platform and/or system(s) selected by the noticing Party for any remote deposition, the Parties agree to meet and confer in good faith to resolve those concerns.

    iii.   The official video record of the deposition will be of the deponent's video feed only. The video feeds of any other participant will not be part of the official record, nor used for any purpose at trial. However, a video record of any attorney questioning the deponent and any attorney representing the deponent in person at the same location as the deponent shall be maintained by the Designated Court Reporting Service for not less than 12 months and may be requested and used in any proceeding concerning alleged interference or impropriety in the deposition.

(f) <u>Deponent</u>. The deponent and their counsel are responsible for locating a private, quiet space in which to participate in the deposition without interruption and for ensuring that the deponent has adequate equipment (e.g., computer, webcam, and microphone), Internet access, and bandwidth necessary to participate in a remote video deposition without interruption. Other than the applications required to conduct the deposition and view exhibits, the deponent shall not have any other applications open or running on the electronic device being used for the deposition. Further, all the deponent's communication devices, other than the device hosting the video conferencing platform used by the Designated Court Reporting Service for that deposition, must be turned off and/or removed from the location of the deposition.

(g) <u>Attendees and Participants</u>. The Parties agree to ensure that any attendees and participants to the remote deposition abide by each of the following requirements:

i. At the start of a remote deposition, all individuals present for the deposition shall identify themselves and their affiliation to any Party.

ii. Any individuals in the same room as the deponent shall identify themselves on the record as being present with the deponent. If another person enters the room where the deponent is located, the deponent shall immediately notify the deposing counsel of the additional persons in the room.

iii. The deponent, court reporter, counsel examining the deponent, and counsel representing the deponent shall be visible to all other participants and their statements shall be audible to all participants at all times while on the record. If the video or audio feed of these persons is lost, the deposition will be suspended and go off the record until resolved. All other remote attendees or participants shall keep their microphones on mute and video turned off unless and until they

16

wish to speak and, after having spoken, shall go back on mute with video turned off.

    iv.  No individual shall engage in a private communication, including through text message, electronic mail, handwritten notes, hand gestures, or the chat feature in the videoconferencing platform, with the deponent while the deposition is on the record.

(h) <u>Exhibits</u>. Any document that may be used as an exhibit during the deposition will be uploaded electronically to the Designated Court Reporting Service using secure and encrypted means (e.g., password protection, secure file transfer, etc.). Deposition exhibits may be transmitted to deposition participants (including the deponent and deponent's counsel) via the Designated Court Reporting Service's electronic sharing platform or the video conferencing platform as exhibits are introduced, by secure file transfer via electronic mail, and/or as otherwise agreed upon by the Parties. The taking Party may additionally provide a hard copy of any deposition exhibits, but hard copies are not required. Deposition exhibits must be transmitted or shared in such a manner that allows the deponent to turn pages of the exhibit; rotate and annotate the exhibit; and zoom in/expand the exhibit. If the deponent annotates an exhibit (whether in electronic or hard copy format), annotations must be shared in real time with the other participants to the deposition by showing on the video recording each annotation. Further, any such annotations must be transmitted to the Designated Court Reporting Service by the deponent and/or deponent's counsel no later than one (1) business day following the deposition.

(i) <u>Technological Issues</u>. The Parties will work cooperatively to address and troubleshoot technological (including audio or video) issues that arise during the remote deposition. This provision shall not be interpreted to compel any Party to proceed with a deposition where the

participants are unable to hear or understand each other. Time spent dealing with technical difficulties will not be counted against any applicable time limits for the deposition. If technical difficulties arise during the taking of a remote deposition, and there is no technical specialist available during the deposition, counsel for the Parties must meet and confer as soon as is practicable, by telephone or other means, to determine whether the remote deposition can proceed or should be continued to a future date. If technical difficulties arise that make the completion of a remote deposition impracticable, counsel for the Parties and the deponent shall resume the remote deposition at a mutually convenient opportunity within a reasonable period of time.

Dated: February 2, 2023

So Ordered.

Dated: February 3, 2023
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

Respectfully submitted,

*/s/ Ian M. Gore*
Ian M. Gore (IG2664)
Danielle Nicholson (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883
igore@susmangodfrey.com
dnicholson@susmangodfrey.com

Seth D. Ard (SA1817)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
sard@susmangodfrey.com

Steven Sklaver (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

Fax: (310) 789-3150
ssklaver@susmangodfrey.com

Ryan Sparacino (*Pro Hac Vice*)
Tejinder Singh (TS0613)
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
ryan.sparacino@sparacinopllc.com
tejinder.singh@sparacinopllc.com

*Counsel for Plaintiffs*


*/s/ Mitchell R. Berger*
Mitchell R. Berger (MB-4112)
Alexandra E. Chopin (AC-2008)
Benjamin D. Wood (Pro Hac Vice)
1211 Avenue of the Americas, 26th Floor
New York, New York 10036

2550 M Street, NW
Washington, D.C. 20037

t:  (202) 457-6000
f:  (202) 457-6315
mitchell.berger@squirepb.com
alexandra.chopin@squirepb.com
benjamin.wood@squirepb.com


## CERTIFICATE OF SERVICE

I hereby certify this 2nd day of February, 2023 that I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the attorneys of record.


*/s/ Danielle Nicholson*
Danielle Nicholson

19

## EXHIBIT A

1. **PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI:

- The first file will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension, that contains the agreed-upon Metadata fields in UTF-8 encoding.

- The second file will be a cross-reference file that contains the corresponding image information [IDX] identifying Document breaks. The acceptable formats for the cross-reference files are .log and .opt.

2. **PRODUCTION METADATA FIELDS**

The Parties agree to provide the following Metadata fields for all productions, to the extent such Metadata exists for the produced Documents:

- BegBates: Beginning Bates Number
- EndBates: Ending Bates Number
- BegAttach: Beginning Bates number of the first Document in a Document family range
- EndAttach: Ending Bates number of the last Document in attachment range in a Document family range.
- Custodian: Name of the Custodian of the Document produced (LastName_FirstName format)
- FileExt: File extension
- FileName: Filename of the original source ESI as stored by the custodian
- NativeLink: Path and filename to produced Native Format file
- EmailSubject: Subject line extracted from an E-mail message
- Title: Title field extracted from the Metadata of a non-E-mail Document.
- Author: Author field extracted from the Metadata of a non-E-mail Document. The Parties acknowledge that the Author field may not actually be the Author of the Document.
- From: From field extracted from an E-mail message.
- To: To or Recipient field extracted from an E-mail message
- Cc: CC or Carbon Copy field extracted from an E-mail message
- BCC: BCC or Blind Carbon Copy field extracted from an E-mail message
- DateSent: Sent date of an E-mail message (mm/dd/yyyy format)
- TimeSent: Sent time of an E-mail message (hh:mm:ss format)
- DateLastModified: Last modification date (mm/dd/yyyy)
- TimeLastModified: Last modification time (hh:mm:ss format)

- <u>DateCreated</u>: DateCreated Metadata field. The Parties acknowledge that the DateCreated field may not actually be the date the Document was created due to the ease of change to that field and the technical definition of the field.
- <u>TimeCreated</u>: Time the Document was created. The Parties acknowledge that the TimeCreated field may not actually be the time the Document was created due to the ease of change to that field and the technical definition of the field.
- <u>E-mailFolderPath</u>: E-mail folder path of the E-mail (e.g., jdoe.pst\mailbox\inbox\financials)
- <u>OriginalFolderPath</u>: File location for loose files (e.g., C:\users\jdoe\desktop\financials)
- <u>HashValue</u>: MD5 or SHA-1 hash value
- <u>File Size</u>: File size in kilobytes (KB)
- <u>Redacted</u>: Populated with Y or N if Document has redactions
- <u>ExtractedText</u>: File path to Extracted Text/OCR File
- <u>Confidentiality</u>: "Confidential," "Attorneys' Eyes Only," or "Experts' Eyes Only," if a Document has been so designated under the Protective Order; otherwise, blank.
- <u>Page Count</u>: Total number of pages in the Document
- <u>Attach Count</u>: Number of attached files
- <u>Message-ID</u>: The Outlook Message ID assigned by the Outlook mail server (if applicable)

SO ORDERED.

Dated:

_____

HON. LORNA G. SCHOFIELD
United States District Judge
