**SUSMAN GODFREY L.L.P.**

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

---

March 2, 2023

**Via CM/ECF**

Hon. Lorna G. Schofield
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Defendant shall file a responsive letter, not to exceed three pages, by **March 9, 2023**.
>
> So Ordered.
>
> Dated: March 3, 2023
> New York, New York
>
> _/s/ Lorna G. Schofield_
> **LORNA G. SCHOFIELD**
> **UNITED STATES DISTRICT JUDGE**

Re:   Case No. 20-cv-4322, *King v. Habib Bank Limited*, Plaintiffs' Letter Requesting Pre-Motion Conference Regarding Discovery Dispute

Dear Judge Schofield:

Pursuant to Individual Rule III.A.1 and Local Civil Rule 37.2, Plaintiffs request a pre-motion conference on March 17, 2023, regarding their motion to compel Defendant to expand the temporal scope of its document collection and production efforts to coincide with the relevant time period of the allegations in the Complaint.

### I.   Background of Case and Instant Dispute

Plaintiffs are hundreds of American nationals injured, and the family members of American nationals killed, in terrorist attacks in Afghanistan. Plaintiffs allege that Defendant—a Pakistani bank that operated in New York through the relevant time period—violated the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), by knowingly supporting the terrorist organizations and their fundraisers who committed and/or facilitated the terrorist attacks that injured Plaintiffs, including via Defendant's New York branch.

The instant dispute concerns the relevant time period for discovery. Plaintiffs contend that time period should commence on January 1, 2006 for the majority of Plaintiffs' document requests. While the specific terrorist attacks that injured Plaintiffs did not *start* until mid-2010, that date, of course, marks the tragic culmination of the misconduct at issue. Defendant, in fact, *admitted* in a December 2006 Written Agreement with government regulators that it failed to comply with the precise anti-money laundering ("AML") laws enacted to prevent facilitation of the terrorist support alleged here. Financing of terrorist activities from New York to Afghanistan does not magically or simplistically happen in just six months, yet Defendant contends the relevant time period for discovery commences only six months before the first specific terrorist attack alleged—*i.e.*, on January 1, 2010. The parties conferred telephonically regarding this dispute on February 16, 2023, pursuant to Individual Rule III.C.3 and Local Civil Rule 37.3(a).

March 2, 2023
Page 2

## II. Basis for Plaintiffs' Motion to Compel the Requested Discovery

The relevant time period for discovery is case specific. "[T]here is no bright line rule capable of helping a court fix the appropriate look-back period for every case." *In re Terrorist Attacks on Sept. 11, 2001*, 2021 WL 5449825, at *4 (S.D.N.Y. Nov. 22, 2021) (citation omitted). Rather, Rule 26(b)(1) authorizes "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Relevance in this context 'is an extremely broad concept,'" *id.* at *2 (citation omitted), and "presents a 'relatively low threshold.'" *In re Terrorist Attacks*, 2018 WL 4237470, at *7 (S.D.N.Y. Aug. 29, 2018) (citation omitted). For example, courts in this district have held that a "reasonable" period for ATA jurisdictional discovery alone was over three years and eight months before the first attack, particularly where the terrorist activity was "complex." *In re Terrorist Attacks*, 2021 WL 5449825, at *4.

Plaintiffs' claims assert the precise type of "complex" terrorist activity that warrants discovery from 2006 to 2009. Plaintiffs allege the attacks were authorized and committed by a syndicate of terrorist organizations spanning decades of operation, including al-Qaeda, Lashkar-e-Taiba, Jaish-e-Mohammed, the Al-Rehmat Trust, the Afghan Taliban (including the Haqqani Network), the Pakistani Taliban, and their directors and operatives (the "Syndicate"). Dkt. 58 (MTD Order) at 2, 12; Dkt. 1 (Compl.) ¶¶ 21-127. While this Syndicate "function[ed] more or less as a single entity by 2009," that process did not occur overnight. Dkt 58 at 12. As the Complaint explains, it was the product of years of coordination and interoperation in the 2000s that led to the "ramping up [of] attacks on U.S. forces during the mid-2000s." *E.g.*, Compl. ¶¶ 46, 55, 60-64, 83-84, 92-93, 105, 107-09, 117. And pre-2010 discovery regarding the Syndicate's existence and Defendant's awareness and support thereof is probative of whether "the relationships between Defendant's customers and [the Syndicate] were well known" by the date of the attacks and of Defendant's knowledge of its "role in unlawful activities from which [the Syndicate's] attacks were foreseeable"—issues that this Court noted bear directly on Plaintiffs' claims. Dkt. 58 at 15.

Pre-2010 discovery also is relevant because Plaintiffs' Complaint alleges Defendant's facilitation of terrorist activity extends back to at least 2006, when Defendant and its primary U.S. regulators—the Federal Reserve System ("FR") and the New York Department of Financial Services ("NY DFS")—executed a public agreement that acknowledged Defendant had failed to comply with the AML laws and regulations enacted to prevent the type of terrorism financing and support asserted here. Compl. ¶¶ 129-31. As this Court noted, Defendant's years-long "flout[ing] [of] regulations designed to stem the flow of funds to terrorists" "precipitated multiple investigations by the [NY DFS]" and other regulators, including the investigation(s) culminating in the December 2006 Written Agreement where Defendant "first committed to clean up its AML procedures." Dkt. 58 at 3. Further, Defendant specifically relies on its alleged efforts from 2006 to 2009 to comply with that agreement as evidence of its supposed adherence to the regulatory requirements at the heart of Plaintiffs' claims. *See* Dkt. 48 at 7 (asserting Defendant, "as a result of this 2006 Written Agreement," made "improvements" that led the "regulators [to] f[i]nd [Defendant] had satisfied all of the requirements of the 2006 Written Agreement" from 2006 through 2014). Defendant cannot simultaneously claim the 2006-2009 period is not relevant while relying on its purported compliance efforts in that same time period to attempt to show it is not liable under the ATA.

March 2, 2023
Page 3

For these reasons and those below, Defendant should be ordered to search for and produce responsive materials from January 1, 2006 to December 31, 2009 for at least the following categories of Plaintiffs' document requests:

**Facilitation and Support of Terrorists and Terrorist Activity (RFP Nos. 4-12, 21-23, 25-27, 29, 35-37)**. These requests relate to Defendant's facilitation and support of accounts and transactions by a specific roster of individuals and entities associated with terrorist groups and activity. Except for a small subset of account opening records that predate 2010, Defendant has agreed to produce documents from only 2010-2019 for these requests. The 2006-2009 period also is relevant for the reasons noted above—to show the coordination and interoperation of the complex Syndicate that was formed in the years leading up to the first attack and Defendant's knowledge and support thereof. A defendant's "provision of financial support to the[] entities [associated with the alleged terrorist activity] and how that support was provided" is "core" to the issues at stake in ATA cases and fully within the scope of Rule 26(b)(1). *In re Terrorist Attacks*, 2021 WL 5449825, at *5 (granting such discovery for 3.75 years before first attack); *see* Dkt. 58 at 6 (noting that evidence that Defendant processed "transactions for terrorists and their funders and fronts" is "the very conduct that could have subjected them to liability under the ATA").

**Compliance Systems Relating to AML Requirements (RFP Nos. 19, 20, 32-34)**. These requests relate to documents that describe the operation of the systems, protocols, and software that Defendant used and/or implemented to allegedly prevent its facilitation of transactions on behalf of terrorists and their funders. This information is relevant to understanding the transaction data, internal reports, and other documents responsive to the requests identified above, and to evaluate Defendant's compliance with the U.S. laws enacted to prevent terrorism financing.

**Investigations and Audits Relating to AML Compliance and Practices (RFP Nos. 39-42)**. Third party and internal audits and investigations relating to Defendant's noncompliance with AML laws, including the 2006 Written Agreement, are directly relevant to Defendant's failure to implement the internal controls and procedures necessary to prevent its alleged facilitation of transactions in support of the Syndicate. Discovery relating to "terror financing and sponsorship investigations directed at [defendant] and conducted by [defendant], [the country in which defendant operates], the United States, or other relevant parties," including those "identified very specifically in the [complaint]," is fully within Rule 26(b)(1)'s broad scope. *In re Terrorist Attacks*, No. 03-MD-570 (S.D.N.Y.), Dkt. 6996-1 at 3 (categorizing these requests as "Terrorism Finance Investigation[s]"); *In re Terrorist Attacks*, 2021 WL 5449825, at *9 (compelling requested Terrorism Finance Investigation records, including up to 3.75 years prior to first attack).

Defendant's alleged burden in expanding its collection to cover 2006 to 2009 remains unsubstantiated. *Harris v. Bronx Parent House Network, Inc.,* 2020 WL 763740, *4 (S.D.N.Y. Feb. 14, 2020) (resisting party must make a "specific showing that the request would be overly burdensome"). In any case, the burden is substantially outweighed by the importance of the issues at stake (the rights of hundreds of American nationals killed and wounded in terrorist attacks); the large amount in controversy (over one billion dollars); Defendant's primary control of and access to relevant information in this case; and the importance of the requested discovery to Plaintiffs' claims (as described above). *See* Fed. R. Civ. P. 26(b)(1).

March 2, 2023
Page 4

Sincerely,

/s/ *Danielle Nicholson*
Ian M. Gore (IG2664)
Danielle Nicholson (Pro Hac Vice)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883
igore@susmangodfrey.com
dnicholson@susmangodfrey.com

Seth D. Ard (SA1817)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
sard@susmangodfrey.com

Steven Sklaver (Pro Hac Vice)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
ssklaver@susmangodfrey.com

Ryan Sparacino (Pro Hac Vice)
Tejinder Singh (TS0613)
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
ryan.sparacino@sparacinopllc.com
tejinder.singh@sparacinopllc.com

*Counsel for Plaintiffs*