# Susman Godfrey l.l.p.

www.susmangodfrey.com

_____

April 12, 2023

Hon. Ona T. Wang, United States District Court
Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007

**Re:    No. 20-cv-4322,** *King v. Habib Bank Limited*, **Plaintiffs' Reply Letter re Dkts. 94, 100**

Pursuant to the Court's March 15, 2023 Order (Dkt. 102), Plaintiffs respond to Habib Bank Limited's ("HBL") March 29, 2023 Letter (Dkt. 104) regarding the discovery disputes at Dkts. 94 and 100. Plaintiffs are simultaneously filing a separate response to the two additional pages of argument that HBL filed regarding these disputes in its April 6, 2023 Letter (Dkt. 106).

**ISSUE 1 - Search Terms Relating to the Terrorist Syndicate.** Plaintiffs' discovery requests identified two categories of individuals and entities relevant to the Syndicate: (1) the exemplary Syndicate members in the Complaint, including their U.S. Department of Treasury ("DOT") strong aliases[1] ("Group 1"); and (2) other parties with demonstrated ties to the Syndicate who were not specifically named in the Complaint ("Group 2"). Dkt. 100 at 1. HBL served search terms on February 9 that made clear it had not searched for any Group 1 strong aliases, despite acknowledging it was required to search for such aliases as part of its compliance protocol. In response, Plaintiffs provided HBL a list that included both the Group 1 strong aliases and certain names and strong aliases that fall into Group 2. HBL agreed to search for Group 1 strong aliases but refused to search for 41 individuals and entities (plus their strong aliases) in Group 2. The instant dispute concerns those 41—not "254 persons and entities." *Contra* Dkt. 104 at 1.[2]

*Relevance*. HBL disputes the relevance of Group 2 on the basis that (1) Plaintiffs have not shown "HBL provided banking services" to Group 2 that would support JASTA liability, and (2) the Group 2 names were not in the Complaint. Dkt. 104 at 1-3. The first argument is incorrect, the second is irrelevant, and neither is a defense to discoverability. As a court examining the same issue in the same context recently held, HBL improperly "conflates what is required for Plaintiffs to establish [HBL's] liability as a matter of law," and the low threshold for "Rule 26's less exacting relevance and proportionality standards." *Miller v. Arab Bank, PLC*, 2023 WL 2731681, *5 (E.D.N.Y. Mar. 31, 2023). This Court already upheld Plaintiffs' claim for secondary liability under JASTA. Dkt. 58. Plaintiffs are therefore entitled to "discovery regarding any nonprivileged matter that is relevant to [that claim]." *In re Terrorist Attacks*, 2018 WL 4237470, at *7 (S.D.N.Y. Aug. 29, 2018). Plaintiffs are not—as HBL suggests—required to "prove the[] elements [of the claim]…to obtain discovery"; rather, they "need only demonstrate that the information they request *is relevant to any of the elements of the claims alleged*." *Miller*, 2023 WL 2731681, *5.

JASTA imposes liability for "aid[ing] and abet[ting]" international terrorism "by knowingly providing substantial assistance." 18 U.S.C. § 2333(d)(2). This standard does ***not*** require showing "substantial assistance to the principal" that perpetrated the attack. *Bonacasa v. Standard Chartered PLC*, 2023 WL 2390718, *9 (S.D.N.Y. Mar. 7, 2023). It simply requires that HBL gave

---

[1] *See, e.g.,* https://home.treasury.gov/news/press-releases/jl2615 (designating aliases with the name).
[2] HBL has since agreed to search for one of the disputed names, taking the total from 42 to 41.

1

April 12, 2023

"substantial assistance," which includes providing "substantial assistance [that] can flow to the [foreign terrorist organization ("FTO")] 'indirectly,' such as through an 'intermediary,' even if the entity directly aided is not a FTO." *Id*. (quoting *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 495-96 (2d Cir. 2021)); *see* Dkt. 58 at 6 (processing "transactions for terrorists and their funders and fronts" is "the very conduct that could have subjected [HBL] to liability"); *Siegel v. HSBC*, 933 F.3d 217, 223 n.5 (2d Cir. 2019) ("[T]he statute does not, by its terms, limit aiding-and-abetting liability to those who provide direct support to terrorist organizations."). Further, "[e]ven absent [HBL's] knowledge that an organization to whom it is providing financial support is engaged in terrorism, [HBL] may be found liable when it knows there is a substantial probability that the organization engages in terrorism but...does not care." *Miller*, 2023 WL 2731681, at *5.

The 41 individuals and entities in Group 2 are either (1) U.S. government-designated terrorists and fundraisers of the Syndicate that discovery ***shows*** HBL supported or (2) intermediaries that HBL knew or should have known supported that Syndicate despite not being formally designated. HBL's knowledge and support of Group 2 thus is plainly relevant to whether HBL "aid[ed] and abet[ted]" the Syndicate terrorist attacks alleged in the Complaint "by knowingly providing substantial assistance" to the Syndicate's members and intermediaries. 18 U.S.C. § 2333(d)(2); *see Bonacasa*, 2023 WL 2390718, *9-13 (bank could be liable under JASTA by facilitating transactions for fertilizer company with role in "IED-making operations" of the terrorist network).

HBL's claim that Plaintiffs are required to show that HBL "provided banking services" to Group 2 as a predicate to seeking discovery regarding them (Dkt. 104 at 1-2) flips the rules of discovery on their head, particularly when HBL has not identified ***any undue burden associated with the discovery Plaintiffs seek***. *Miller*, 2023 WL 2731681, at *4-5 (compelling bank to provide discovery relating to 400 individuals not named in the complaint where defendant failed to "sufficiently articulate" any burden). The Syndicate is a massive terrorist network spanning decades of operation that includes al-Qaeda, Lashkar-e-Taiba ("LeT"), and the Afghan Taliban (including the Haqqani Network). Indeed, the Haqqani Network alone had an estimated membership of ***10,000 to 15,000*** during the relevant period. Requiring Plaintiffs to identify every Syndicate member HBL ever assisted (and to do so in the Complaint itself, as HBL apparently insists) not only is an impossible ask given the non-public and highly regulated nature of the banking industry—it also is at direct odds with Rule 8's notice pleading standard. *See* FRCP 8(a) (requiring only "a short and plain statement of the claim"); *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 2021 WL 4264033, at *3 (S.D.N.Y. Sept. 20, 2021) ("[d]iscovery is not limited to issues raised by the pleadings"). HBL's "theory of the pleadings" doctrine was abolished long ago. *Webb v. Hiykel*, 713 F.2d 405, 407-08 (8th Cir. 1983) ("It is well settled that the 'theory of the pleadings' doctrine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the Federal Rules of Civil Procedure."); *Quinones v. City of Binghamton*, 997 F.3d 461, 468 (2d. Cir. 2021) (similar).

In any case, the 41 individuals and entities in Group 2 indisputably ***have*** "[a] demonstrated connection to HBL," Dkt. 104 at 1, as summarized in Exhibit A. HBL's productions to date show that HBL facilitated transactions on behalf of the Syndicate FTOs and networks of which the individuals and entities in Group 2 are an integral part. By way of example—

- HBL operated accounts for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and other sanctioned terrorists. HBL's willingness to maintain accounts

April 12, 2023

for these Syndicate members further supports the relevance of discovery to the Group 2 affiliates of the same. That those accounts were "*opened* long before the United States designated them" is irrelevant, Dkt. 104 at 3, given a person need not be designated to support liability, and the accounts were active *long after* the persons were designated. It strains credulity to conclude that the transfers HBL processed for them were so "routine" as to "negate" HBL's "general awareness" that the transfers facilitated terrorism. *Id*. In any case, the Court already rejected HBL's claim "that one who provides 'routine' banking services to terrorists is not 'generally aware' that they are assuming a role in terrorism." Dkt. 58 at 16.

- HBL processed over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Contra* Dkt. 104 at 4 (falsely asserting ▮ "is clear of any negative news"). HBL's willingness to open an account for a company with open ties to the Haqqani Network (and worse, characterize that account as "low risk") demonstrates the relevance of discovery to the other Haqqani family members and fundraisers in Group 2, each of whom were publicly designated for their support of Sirajuddin Haqqani and fundraising for the network. *E.g.*, Ex. A., Rows 8, 17-18, 32-36.
- HBL transferred over ▮▮▮▮▮▮▮▮▮▮▮▮—another Group 2 entity designated for funneling billions of dollars on behalf of terrorists, including the Taliban and LeT. Ex. A, Row 38; KINGHBL00146304. Its "connection to HBL" not only is undeniable; it is overwhelming.
- HBL processed a funds transfer from ▮▮▮▮▮▮▮▮▮▮▮▮ and identified in Group 2. Despite this obvious link between HBL and LeT, HBL refuses to search for ▮ and his close LeT affiliates, each of whom was sanctioned precisely for LeT fundraising and operations. Ex. A, Rows 1-16, 19-30.
- HBL held ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, KINGHBL00067749.

In short, pursuant to Rule 8, Plaintiffs' Complaint provides adequate notice of the claims at issue and is based on the facts that were publicly available. Plaintiffs are entitled to discovery regarding the additional individuals that are relevant to Plaintiffs' case. To the extent HBL is claiming the requested discovery is not sufficient to prove liability, that is both wrong and a question for the jury—not a shield behind which HBL can evade the "relatively low threshold" under Rule 26. *In re Terrorist Attacks*, 2018 WL 4237470, at *7; *see Miller*, 2023 WL 2731681, *5.

**<u>Burden & Proportionality</u>**. JASTA provides Plaintiffs "the ***broadest possible basis*** to seek relief against persons [and] entities that have provided material support to foreign organizations or persons that engage in terrorist activities against the United States…regardless of whether that assistance is provided directly or indirectly." *Bonacasa*, 2023 WL 2390718, at *8 (alterations omitted). Requiring HBL to search for Group 2 is proportional to the needs of this case given the purpose of JASTA, the "profound and compelling" "interest of the United States in depriving international terrorist organizations of funding that could be used to kill American citizens" such

---

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

April 12, 2023

as Plaintiffs, Rule 26's broad scope for discovery, HBL's near-exclusive access to relevant information, and the large amount in controversy: over $1 billion. *See Wultz v. Bank of China Ltd.*, 61 F.Supp.3d 272, 290 (S.D.N.Y. 2013). Liability in this case turns on HBL's facilitation of transactions in support of the identified terrorist organizations. Because the Syndicate relied on its network of individual supporters to process transactions on its behalf, the identification of relevant transactions requires comprehensive discovery of those supporters—including the ones in dispute. *Miller*, 2023 WL 2731681, at *6 (granting discovery as to "large number of [additional] individuals" in JASTA case, reasoning that the information is "proportional" because "cumulative evidence provided by the transactions may tend to demonstrate Defendant's knowledge").

HBL as the "party resisting discovery has the burden of showing specifically how" the discovery is "overly broad, burdensome or oppressive…by submitting affidavits or offering evidence revealing the nature of the burden." *Harris v. Bronx Parent Housing Network, Inc*., 2020 WL 763740, at *2 (S.D.N.Y. Feb. 14, 2020). Despite the Court's request that HBL address burden (Dkt. 102) and despite HBL filing two letters on the issue (Dkts. 104 & 106), it still has failed to do so. HBL described the time it spent on discovery it **already agreed to provide**—not the supposed proportionality evidence required for discovery it **refuses to produce**. This alone is enough to reject HBL's position. *Id.* at *4 (granting motion to compel given "no specific showing that the request would be overly burdensome, as is required"); *Miller*, 2023 WL 2731681, at *5 (same).

*Averbach* does HBL no favors. Dkt. 104 at 2. That case concerned a motion to compel a **non-party**, Arab Bank, to search for names affiliated with terrorist activities facilitated by the defendant. 2022 WL 17730096, at *1-2 (S.D.N.Y. Dec. 16, 2022). The court denied the motion because (1) the discovery was not "tethered to the allegations in th[e] action" or proportional to the expectations of a **non-party**; and (2) the non-party **already had searched for over 15,000 individuals and entities in response to requests from the same plaintiffs** in a related case. *Id*. None of those facts are present here. The requested discovery is directly tethered to Plaintiffs' allegations, and HBL is the defendant. That HBL refuses to search for 41 individuals based on a case in which the party had previously searched for **over 15,000** supports Plaintiffs—not HBL.

**ISSUE 2 - Relevant Time Period.** HBL does not dispute that courts routinely grant discovery from several years before a terrorist attack as "reasonable" under the ATA. *Miller*, 2023 WL 2731681, at *2 (compelling materials from three years before the attacks, noting that "actions taken before the attacks and documents pre-dating them are relevant to the claims alleged"); *In re Terrorist Attacks on Sept. 11, 2001*, 2021 WL 5449825, at *4 (S.D.N.Y. Nov. 22, 2021) (compelling materials from 3.75 years before attack for jurisdictional discovery alone). Nor does HBL dispute such discovery is probative of HBL's awareness of the Syndicate and its knowledge of its own "role in unlawful activities from which [the Syndicate's] attacks were foreseeable"—as this Court held. Dkt. 58 at 15. Indeed, that HBL has produced *some* pre-2010 documents concedes the timeframe's relevance while also highlighting the prejudice inherent in allowing HBL to selectively produce some pre-2010 documents but not all. *See* Dkt. 97 at 1; Dkt. 104 at 3-4.

HBL instead makes two arguments, each without merit. *First*, HBL's assertion that Plaintiffs must prove liability (specifically, proximate causation) as a predicate to obtaining Rule 26 discovery is improper for the reasons explained above. Dkt. 97 at 2-3. In any event, HBL is wrong that ATA liability cannot be found where the defendant's substantial assistance precedes an attack by years. Courts recognize that "[t]errorism campaigns often last for many decades," and "[s]eed money for

4

April 12, 2023

terrorism can sprout acts of violence long after the investment." *Boim v. Holy Land Found.*, 549 F.3d 685, 699-700 (7th Cir. 2008) (en banc). Accordingly, even a *two-year gap* is still far from the point at which "considerations of temporal remoteness might…cut off liability." *Id.* Discovery regarding such funding and HBL's knowledge thereof plainly has "a[] tendency to make [HBL's liability] more or less probable." *Miller*, 2023 WL 2731681, at *3. Whether that discovery is sufficient for *liability* does not negate its *relevance*. *In re Terrorist Attacks*, 2021 WL 5449825, at *4 (rejecting the argument HBL makes and compelling discovery from 3.75 years prior to attack).

*Second*, HBL's claim that "none of the 2006-2019 regulatory examinations concluded that HBL had engaged in terrorism financing" is directly contradicted by *HBL's own documents*. Dkt. 97 at 3. The investigation that formed the basis for the NY DFS' $225 million fine against HBL uncovered that HBL facilitated over ███████████████████████████████████████ That is why the NY DFS publicly announced that HBL had placed "the integrity of the financial services industry and the safety of our nation at risk" by continuing to "open the door to the financing of terrorist activities that pose a grave threat to the people of this State." *See, e.g.*, https://www.dfs.ny.gov/reports_and_ publications/press_releases/pr1512171. Similarly, HBL's reliance on the Federal Reserve's description of the documents the *Federal Reserve* allegedly possesses is misplaced on a motion to compel documents *from HBL*. Dkt. 104 at 4. The overwhelming evidence of HBL's financing of the Syndicate—not the Federal Reserve's one-sided view of its limited role in uncovering that financing—governs whether Rule 26 is satisfied.

HBL's "burden" arguments on this issue are similarly heavy on adjectives and short on proof. Dkt. 104 at 4 ("arduous and enormously expensive"); Dkt. 97 at 2 ("extraordinary effort"). Again, HBL's failure to prove any undue burden is enough to reject its position. *Miller*, 2023 WL 2731681, *2 (declining to "narrow the Relevant Period" to the years in which the attacks occurred where defendant "fails to explain why the material sought from [three years prior to the attacks] is not properly discoverable"). Pre-2010 discovery is proportional for the reasons stated *supra* at 4-5—particularly given HBL operated accounts for relevant terrorists long before 2010, has already produced some cherry-picked documents predating 2010, and has pointed to pre-2010 discovery to show its alleged *compliance* with the laws that Plaintiffs accuse HBL of violating. HBL's shield-sword approach to pre-2010 discovery is highly prejudicial and improper. *Upper Deck Co., LLC v. Breakey International, BV*, 390 F. Supp. 2d 355, 362 (S.D.N.Y. 2005) (a party "cannot shield itself from discovery and then use the same information it sought to withhold as a sword").

**ISSUE 3 - Refusal to Respond to Interrogatories.** Interrogatory Nos. 6, 7(d), and 9 seek an identification of "persons at HBL" with knowledge. HBL is defined to include present and former employees. HBL refused to identify responsive *former* employees and their last known addresses. HBL's basis is not any legal authority, but rather the assertion that HBL was entitled to ignore the phrase "persons at HBL" because it believed Plaintiffs should have used the term "employee." HBL does not address the relevance, burden, or proportionality of the requested discovery for good reason: it has no defense. HBL claims in a footnote that its conduct is excusable based on its supposed compliance with an entirely separate rule—Rule 26(e)—by providing *a portion* of the disputed information in an email from counsel. Dkt. 104 at n.10. That is wrong per the case law Plaintiffs cite (Dkt. 100 at 3) and HBL does not address. HBL's claim that Plaintiffs should "serve new interrogatories" that hew to HBL's strained interpretation is a mere delay tactic that is at odds with the Court's rules and FRCP 1. *See* Local Civil Rule 26.4(a)-(b); Individual Rule II(b).

5

April 12, 2023

Sincerely,

/s/ *Danielle Nicholson*
Ian M. Gore (IG2664)
Danielle Nicholson (Pro Hac Vice)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883
igore@susmangodfrey.com
dnicholson@susmangodfrey.com

Seth D. Ard (SA1817)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
sard@susmangodfrey.com

Steven Sklaver (Pro Hac Vice)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
ssklaver@susmangodfrey.com

Ryan Sparacino (Pro Hac Vice)
Tejinder Singh (TS0613)
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
ryan.sparacino@sparacinopllc.com
tejinder.singh@sparacinopllc.com

*Counsel for Plaintiffs*