


KATHY HOCHUL
Governor

ADRIENNE A. HARRIS
Superintendent

May 4, 2023

By ECF
The Honorable Ona T. Wang
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Re: Response of Non-Party New York State Department of Financial Services to Plaintiffs' April 19, 2023, Letter in *King, et al. v. Habib Bank Limited,* No. 20-cv-4322-LGS-OTW

Dear Judge Wang:

I write on behalf of the New York State Department of Financial Services (the "Department") in response to Plaintiffs' letter dated April 19, 2023 (ECF 115), in accordance with Your Honor's Order of April 20, 2023 (ECF 118). Plaintiffs seek discovery of privileged documents belonging to the Department and the Board of Governors of the Federal Reserve System (the "Board") (together, the "Agencies") relating to their supervision of Defendant, Habib Bank Limited (the "Bank"). The Agencies sought to resolve this dispute without court intervention, authorizing a limited waiver to allow Plaintiffs to receive certain privileged bank examination materials, but Plaintiffs insist on far broader disclosure. The requested discovery is overbroad, irrelevant, and would impose an undue burden on a non-party bank regulator. Nevertheless, Plaintiffs seek to move to compel production. The Department respectfully requests that, should the Court determine to permit further proceedings on this dispute, they be conducted pursuant to Local Rule 37.2 and Part II.b. of Your Honor's Individual Practices.

The Department is the New York State agency that regulates the insurance and financial services industry in New York. It has a broad mission that includes, "provid[ing] for the effective and efficient enforcement of the banking and insurance laws," and protecting New York consumers.[1] The Department oversees banks, insurance companies, mortgage lenders, check

[1] N.Y. Fin. Serv. Law § 102.

cashers, virtual currency companies, and student loan servicers, among other businesses. The Department's supervisory authority reaches banks chartered in New York and branches of foreign banks operating in the state. The Bank was, until 2020, one such foreign bank branch.

Examinations are a core element of bank supervision. The Department conducts examinations on an annual basis and in coordination with federal regulators such as the Board. Examiners review a bank's records, policies, and procedures to ensure it is conducting its business in a safe and sound manner. This means, generally, that the bank has adequate capital and liquidity, can react properly to financial stress, produces earnings sufficient to support continued operation and growth, and is well managed, with appropriate compliance policies and procedures. Examiners also evaluate whether an institution has compliant Bank Secrecy Act/anti-money laundering and Office of Foreign Assets Control programs and effective operational controls. If examiners discover compliance failures or evidence of legal violations through the examination process, the Department requires remediation, and those issues may be investigated further by attorneys in the Department's enforcement division, as occurred in the case of the Bank.

The records generated in the course of examination and other supervisory activity, including final reports of examination ("ROEs"), are confidential supervisory information ("CSI") restricted from disclosure pursuant to New York Banking Law ("N.Y.B.L.") § 36(10)[2] and protected by the bank examination privilege. Because the Agencies jointly examined the Bank, much of the CSI at issue in this case is jointly owned. The bank examination privilege is essential to the Agencies' regulatory function, promoting candor between a bank and its regulators and helping to ensure that the Agencies receive accurate information from their regulated entities.[3]

Plaintiffs seek to compel (1) the Bank to produce documents the Agencies have asserted are CSI and (2) the Department to produce documents that are responsive to Plaintiffs' Rule 45 subpoena and are not in the Bank's possession, including CSI and other privileged material.

The Agencies already authorized the Bank to disclose to Plaintiffs documents containing CSI. On March 10, 2023, the Department authorized the Bank to disclose documents including

---

[2] "All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigations . . . in the possession of any banking organization . . . shall be confidential communications, shall not be subject to subpoena and shall not be made public unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof . . . ." N.Y.B.L. § 36(10).

[3] *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2023 U.S. Dist. LEXIS 62699, at *51-52 (S.D.N.Y. Apr. 10, 2023) ("[A]gency opinions and recommendations and banks' responses thereto are protected by a qualified bank examination privilege, which arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications." (internal quotations omitted)); *In re Citigroup Bond Litig.*, 2011 U.S. Dist. LEXIS 155715, at *8-9 (S.D.N.Y. Dec. 5, 2011) ("Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged." (quoting *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992))).

five ROEs and documents containing information relied upon by the Department in its 2017 Statement of Charges and Consent Order, but required that it redact portions of the records plainly irrelevant to Plaintiffs' claims (ROEs typically address a variety of issues that would have no bearing on this case, such as assessments of the Bank's credit policy and market and liquidity risk management practices and procedures; evaluation of asset quality; and review of information technology controls relating to software and hardware development and acquisition) or that are barred from disclosure under federal law. This aligned with the Board's limited waiver of privilege.[4] On March 20, the Bank informed the Department that Plaintiffs had asked the Bank to request that the Department review additional documents for a privilege waiver. The Department did so, and, on March 31, issued a second letter, this time authorizing the disclosure by the Bank of categories of records in the possession of the Bank containing CSI, including all final ROEs for the period relevant to Plaintiffs' claims and all final reports by third parties issued pursuant to a Departmental order, as well as internal Bank emails, presentations, and similar internal records relating to the final reports, except that certain supervisory communications with regulators were to be withheld and, again, patently irrelevant content and material barred from disclosure by federal law were to be redacted.

Despite the Agencies' good faith efforts to avoid a motion to compel by accommodating some of Plaintiffs' requests, Plaintiffs continue to demand unredacted ROEs, all other correspondence between the Department and the Bank, and nonfinal examiner analysis. Plaintiffs have not conveyed to the Department the relevance of or a description of their need for additional portions of final ROEs apparently irrelevant to their claims; draft, interim, or preliminary ROEs; draft consent orders; or nonfinal examiner analysis, records that fall squarely within the scope of the bank examination privilege and N.Y.B.L. § 36(10). To override these privileges without Plaintiffs' demonstration of relevance — which is key to establishing good cause to do so — would unnecessarily undermine the Department's ability to do its work.[5]

With respect to records in possession of the Department that are not also in possession of the Bank, on December 30, 2022, the Department served objections to Plaintiffs' Rule 45 subpoena on a number of grounds in addition to the bank examination privilege and the N.Y.B.L. § 36(10) privilege, including the attorney-client privilege, the attorney work product doctrine, overbreadth, irrelevance, and undue burden, all of which should be afforded significant weight given that the Department is not a party to this litigation.[6]

---

[4] Both authorization letters specified that portions of records to be produced containing CSI clearly unrelated to the claims in the instant case or, in accordance with the Bank Secrecy Act, 31 U.S.C. § 5813(g), that referred to or would reveal the existence of Suspicious Activity Reports ("SARs") or SAR-related material should any exist, must be redacted.

[5] *See, e.g., In re Citigroup*, 2011 U.S. Dist. LEXIS 155715, at *9 (describing that "relevance of the evidence sought to be protected," and potential "future timidity by government employees who will be forced to recognize that their secrets are violable," are among the factors courts consider in determining whether a party requesting disclosure has demonstrated good cause to override the bank examination privilege); *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d at 634. The party seeking discovery bears the burden of demonstrating relevance. *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013).

[6] *In re Terrorist Attacks on September 11, 2001*, 523 F. Supp. 3d 478, 489-90 (S.D.N.Y. 2021) ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to costs imposed on non-parties," and they "must properly accommodate 'the government's serious and legitimate concern that its employees not be commandeered into service by private litigants to the detriment of the smooth functioning of

The documents Plaintiffs seek from the Department are archetypal examples of privileged materials, *e.g.*, internal memoranda including findings and analysis, attorney work product, and other internal records generated by the Department in the course of its confidential examinations and investigations, as well as communications between the Bank and the Agencies.[7] To the extent any portions of these records are not privileged, however, the substance would be factual and drawn from the Bank's records, which Plaintiffs can obtain or already have obtained from the Bank (including, for example, names of account holders, transaction records, account opening documents, and the Bank's policies and procedures). Plaintiffs have never stated that they need this discovery because any factual information is not available from the Bank.

Furthermore, the records Plaintiffs' Rule 45 subpoena demands are voluminous and date back to 2006, if not earlier. The work required to produce the requested discovery — searching for records, interviews of examiners, and privilege analysis necessary to produce records that are merely cumulative, that represent opinions of Department staff or are otherwise unlikely to lead to the discovery of admissible evidence, or are clearly privileged and not subject to disclosure — would impose an undue burden on and further divert the resources of a leanly staffed state agency from its core supervisory and consumer protection responsibilities.

Respectfully submitted,

NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES

By: /s/ *Meredith S. Weill*

Meredith S. Weill, Deputy General Counsel,
Consumer Protection & Financial Enforcement
(4862769)
New York State Department of Financial Services
One State Street Plaza
New York, NY 10004
(212) 480-5279
Meredith.Weill@dfs.ny.gov

*Attorney for Non-Party New York State Department of Financial Services*

---

government operations.'" (quoting *Exxon Shipping Co. v. U.S. Dep't of the Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994)) (citing *Cusumano v. Microsoft Corp*., 162 F.3d 708, 717 (1st Cir. 1998))).

[7] *See Am. Oversight v. U.S. Dep't of Justice*, 45 F.4th 579, 589-90 (2d Cir. 2022) (stating that work product doctrine applies to both opinion and fact work product); *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (citation omitted) (explaining that deliberative process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations" constituting governmental decision-making process).

**CERTIFICATE OF COMPLIANCE**

Pursuant to the April 20, 2023, Order of Magistrate Judge Ona T. Wang in the case, *King, et al. v. Habib Bank Limited*, No. 20-cv-4322-LGS-OTW (ECF 118), Meredith S. Weill, Deputy General Counsel, Consumer Protection and Financial Enforcement, at the New York State Department of Financial Services, hereby certifies that this letter complies with the word limit ordered. According to the word count feature of the word processing program used to prepare this letter, excluding the header, signature block, and this certificate, this letter contains 1,770 words.

/s/ *Meredith S. Weill*