UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEVIN KING, et al.,

              Plaintiffs,

             -against-

HABIB BANK LIMITED,

             Defendant.
------------------------------------------------------------x

20-CV-4322 (LGS) (OTW)

**ORDER**

**ONA T. WANG**, **United States Magistrate Judge**:

Pending now before the Court is Plaintiffs' request for an order compelling Defendant Habib Bank Limited ("HBL") to produce complete data for its "true positive" accounts,[1] including images of paper checks located at various of Defendant's branch locations and warehouses in Pakistan. (*See* ECF Nos. 284, 288, 322, 342, 358). For the reasons set forth below, Plaintiffs' motion is **GRANTED.**

**I.  BACKGROUND**

The Court assumes familiarity with the facts of this case. On June 29, 2024, Plaintiffs filed a letter motion seeking an order to compel HBL to produce "complete account data" for: (1) "true positive accounts that HBL is authorized to produce;" and (2) "true positive UAE customers on the basis that they are subject to foreign privacy laws." (*See* ECF 284). Defendant HBL filed a letter in opposition on August 1, 2024. (ECF 288). The Court entertained oral argument on this issue at the in-person discovery conference on Wednesday, October 9, 2024,

---

[1] Defendant disputes the characterization of these accounts as "true positives." As explained in prior orders, Plaintiffs believe these accounts are "true positive customers of names HBL agreed to or was ordered to search," and the Court uses this naming convention without prejudice to Defendant's ability to make such arguments before Judge Schofield. (ECF 319 at 41).

(ECF 319, 330), and I directed the parties to submit supplemental briefing on whether it is proportional under Rule 26 to compel HBL "to search beyond its 'centralized system'" and produce physical paper checks associated with "true positive" accounts.[2] The parties completed their supplemental briefing on November 1, 2024. (*See* ECF Nos. 322, 342, 358).

## II. DISCUSSION

### A. Proportionality

In general, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 491–92 (S.D.N.Y. July 21, 2014) (citing Fed. R. Civ. P. 26(b)(1)). Rule 26 provides that discovery should be "proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (emphasis added). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Management Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016)).

---

[2] At the October 9 conference, Defendant sought to clarify my October 8 order, which directed HBL to produce "complete data—including complete originator, beneficiary, and payment purpose information for thousands of transactions—for 'True Positive' accounts." (ECF 318). Specifically, Defendant took issue with the potential burden of producing a voluminous amount of paper checks, and included only arguments with respect to producing such checks in their supplemental briefing. (*See, e.g.*, ECF 319 at 34-39) ("But proportionality, we absolutely dispute that the requirement of paper checks which is what I wanted to clarify with your Honor is extremely excessive and it is above and beyond what the case law and Rule 26(b) requires. We have provided check information. It's just not in the format the plaintiffs want."). Accordingly, the Court assumes that the issue of producing paper checks is Defendant's only concern with the October 8 order, and that Defendant will produce all other relevant information as directed under the October 8 order. The following analysis applies to the issue of paper checks only.

This Court has already found that "complete data—including complete originator, beneficiary, and payment purpose information for thousands of transactions—for 'True Positive'" accounts is relevant and proportional under Rule 26. (ECF 318 at 2). Defendant argues, however, that producing images of a voluminous number of archived paper checks "located across 491 branches and five warehouses in Pakistan" is not proportional to the needs of this case. (ECF 322 at 4). The Court finds Defendant's argument uncompelling.

Critically, HBL has confirmed that the paper checks contain transactional data missing from their production thus far, and that may be available at their warehouses and branches in Pakistan; HBL is the singular source of the complete data for these accounts and has the ability to locate and retrieve such checks, notwithstanding potential weather concerns.[3] *Walls v. City of New York*, 502 F. Supp. 3d 686, 695 (E.D.N.Y. 2020) ("Defendants' exclusive access to the information weighs in favor of discovery because it diminishes the availability and relevance of other proportionality concerns."); *see also Bartlett v. Société Générale de Banque au Liban SAL*, 2023 WL 2734641, at *8 (E.D.N.Y. Mar. 31, 2023) ("That there may be voluminous search requirements or a high number of responsive records does not excuse Defendants from providing discovery, particularly in light of the importance of the discovery at issue here and the indisputable fact that each Defendant is the singular source for their own records."). Even if

---

[3] To the Court's surprise, Defendant suggests that production of paper checks is not proportional to the needs of the case because of the risks of "monsoon or retreating monsoon season …, where heavy flooding and landslides can be treacherous and life-threatening." (ECF 322 at 11). Defendant estimates that because of the challenges of monsoon season and the number of checks potentially subject to the Court's order, it would take 60-72 months to collect all checks. The Court would not, of course, direct Defendant to brave dangerous weather and storms for discovery purposes, and the Court suspects Plaintiffs are not asking this of Defendant either. As discussed numerous times, the parties can and are encouraged to meet and confer to come to a mutual solution to such issues. Monsoons do not, however, constitute a complete defense to production in this case.

production is costly, this does not outweigh the clear relevance of the paper checks to the issues in this case. Defendant argues that retrieving and producing the number of checks as proposed by Plaintiffs could take up to eight months and cost upwards of $4 million. (ECF 358 at 4). However, less burdensome means of producing the checks at issue (e.g., sampling, rolling production) could sufficiently reduce their burden, and Defendant does not suggest otherwise.

Considering the stakes of this litigation, the lack of alternative sources for this clearly relevant information, and the ability of the parties to collectively reduce the associated burden of production, I find that production of paper checks is proportional to the needs of this case. Accordingly, Plaintiffs' motion is **GRANTED.**

### B. Cost-Shifting

Defendant also contend that, should the Court order production of paper checks, the Court should "allocate costs for collection and production among the parties" under Rule 26(b). Given that the scope of production of the paper checks is uncertain at this time and the fact-intensive nature of the cost-shifting analysis, Defendant's request is premature. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 324 (S.D.N.Y. May 13, 2003) (holding that cost-shifting analysis would follow after production and the court's review of UBS's affidavit detailing the cost, time, and results of discovery production). To the extent Defendant's request is a motion, it is **DENIED as premature** until after Defendant has completed production of the paper checks.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel Defendant to produce paper checks is **GRANTED**.

The parties are directed to meet and confer regarding the scope of production. The parties are <u>strongly</u> encouraged to work together to craft a solution that allows Plaintiffs to obtain relevant discovery while minimizing the potential costs and burden of production on Defendant. As previously suggested, the parties should consider rolling production and/or a sampling methodology for Defendant's various branches and warehouses. If, however, Defendant does not propose any means to ameliorate their proffered burden, thus requiring the Court's intervention yet again, the Court will consider cost shifting for this and future briefing under Fed. R. Civ. P. 37(a)(5).

**SO ORDERED.**

Dated: March 31, 2025
New York, New York

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge