**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
KEVIN KING, et al.,                                        :
                                                           :
                  Plaintiffs,               :     20-CV-4322 (LGS) (OTW)
                                                           :
                  -against-                :     **ORDER**
                                                           :
HABIB BANK LIMITED,                                        :
                                                           :
                  Defendant.                :
                                                           :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

Pending now before the Court is Plaintiffs' request to compel Defendant Habib Bank Limited ("HBL") to produce foreign regulator inspection records. (*See* ECF Nos. 308, 314, 324, 333, 338, 348, 355, 364). For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

    **I.**    **INTRODUCTION**

The Court assumes familiarity with the facts of this case. On September 13, 2024, Plaintiffs filed a letter motion seeking an order to compel HBL to produce "information relating to regulatory audits, investigations, and inspections by the State Bank of Pakistan … and Central Bank UAE into deficiencies in HBL's anti-money laundering …, know your customer …, counter-terrorism financing …, and transaction monitoring practices." (ECF 308). Defendant filed a letter in opposition on September 18, 2024. (ECF 314). The Court entertained oral argument on this issue at the in-person discovery conference on Wednesday, October 9, 2024. (ECF 319, 330). At the October 9 conference, I directed Defendant to seek permission from the State Bank of Pakistan and the Central Bank of the United Arab Emirates ("CBUAE") (the "Foreign

Regulators") to "disclose final reports, findings, notifications of findings, and internal communications resulting from such reports and notifications," (the "Foreign Regulators' Reports"). (ECF 330). In the alternative, if the Foreign Regulators denied permission to disclose their, I also directed the parties to submit supplemental briefing on (1) the relevance of the Foreign Regulators' Reports and (2) whether the comity analysis favors compelling production of the Foreign Regulators' Reports, notwithstanding the applicability of foreign bank secrecy laws. (ECF 319, 330). The parties completed their supplemental briefing on November 8, 2024. (*See* ECF Nos. 324, 333, 338, 348, 355, 364).

**II.    DISCUSSION**

**A.  The Foreign Regulators' Reports Are Relevant**

In general, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 491–92 (S.D.N.Y. July 21, 2014) (citing Fed. R. Civ. P. 26(b)(1)). Rule 26 provides that discovery should be "proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (emphasis added). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Management Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016)).

As an initial matter, HBL contends that they do not have "possession, custody, or control" of the Foreign Regulators' Reports for the purposes of Rule 34(a)(1), because they are not Defendant's "property," and are thus not discoverable. (*See* ECF 348 at 11). Courts in this district have held that "control" does not require legal ownership, and the mere "practical ability" to obtain the documents at issue is sufficient. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, 02-CV-7377 (LAK), 2007 WL 1518632 (S.D.N.Y. May 17, 2007) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146–47 (S.D.N.Y.1997)). Here, HBL has actual possession of the Foreign Regulators' Reports, which is sufficient under Rule 34. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 39 (2d Cir. 2007) ( "Appellees are entitled to the production of the [relevant] documents in question if appellant has access to them and can produce them.").

We next turn to the question of relevance. Plaintiffs argue that the Foreign Regulators' Reports are relevant as they tend to show systematic failures in HBL's compliance programs, and this goes to whether HBL "knowingly provided substantial assistance" to the Taliban-led Syndicate. (*See* ECF 333 at 4-5). Plaintiffs also posit that public records concerning the Foreign Regulators' Reports suggest potential compliance violations similar to those documented in reports by U.S. regulators, which reports are undisputably relevant. Defendant contends, however, that the Foreign Regulators' Reports only show a general failure to comply with regulatory requirements, and this, is and of itself, does not show "conscious, culpable participation in terrorism." (ECF 355 at 2). Both parties rely in part on *Twitter, Inc. v. Taamneh* to support their positions. 598 U.S. 471 (2023).

3

Defendant has twice attempted to cite to *Twitter* to overturn Judge Schofield's decision denying HBL's motion to dismiss with respect to Plaintiffs' secondary liability claims, specifically the claims for aiding-and-abetting and conspiracy liability both in this case and the now consolidated *Hakimyar v. Habib Bank Limited*. *See King v. Habib Bank Limited*, 23-CV-4322 (LGS) (OTW), 2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023); *see also Hakimyar v. Habib Bank Limited*, 24-CV-993 (LGS) (OTW), 2025 WL 605575 (S.D.N.Y. Feb. 25, 2025). As Judge Schofield explicitly set out in this case:

> While the Supreme Court emphasized the significance of the nexus between the assistance and a specific act of terrorism, it also left room for the possibility that some set of allegations involving aid to a known terrorist group would justify holding a secondary defendant liable for all the group's actions or perhaps some definable subset of terrorist acts. For example, if a provider of routine services does so in an unusual way, those actions might well constitute aiding and abetting a foreseeable terrorist attack. Consistent with these principles, *King I* held that the Complaints sufficiently allege that Defendant provided non-'routine' banking services to terrorists and their allies … placing Defendant in a category of defendants that the Second Circuit has found secondarily liable based on their special treatment of the terrorist-affiliated Customers.

*King*, 2023 WL 8355359, at *3 (internal quotations and citations omitted).

Despite this explicit finding, Defendant argues now that "[t]he Foreign Reports are irrelevant … because there is nothing about a supposedly general failure to comply with regulatory requirements that inherently demonstrates conscious, culpable participation in terrorism… If that were the case, then any bank with compliance shortcomings would face liability under the ATA." (ECF 353 at 7). However, this evidence—regulator reports concerning routine services done in a potentially unusual way—is exactly the type that would tend to prove or disprove the claim that Judge Schofield expressly held was cognizable under *Twitter* and

4

Second Circuit precedent. Defendant's argument is, at best, a poorly concealed attempt to revisit Judge Schofield's prior ruling under the guise of a relevance inquiry. Because Plaintiffs properly stated a claim for secondary liability under the ATA, Plaintiffs need only show, as they have done so here, that the production of the Foreign Regulators' Reports is "reasonably calculated to lead to discovery of admissible evidence" in support of that claim. Further, the Foreign Regulators' Reports are not unreasonably duplicative, as reports by distinct foreign regulators over different branches in a different country are likely to hold different information from U.S. regulator reports; the fact that there may be some overlap between the reports is not sufficient to render them duplicative and to preclude discovery here.

Accordingly, Defendant has not shown that production of the Foreign Regulators' Reports are not relevant, overly broad, or proportionate to the needs of the case.

### B. Comity Analysis Favors Compelling Discovery

Having found that the Foreign Regulators' Reports are relevant, the Court now turns to whether compelling production is appropriate notwithstanding any conflict with foreign laws.

"When a lawsuit requires discovery of materials located in a foreign nation … foreign legal systems and foreign interests are implicated." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 551-52 (1987). "This triggers a two-step process. First, a court must determine if there is actually a conflict between the discovery sought and foreign law… [Second], [i]f a true conflict exists, courts in this Circuit must perform a seven-factor comity analysis to determine if that discovery is proper." *In re Terrorist Attacks on September 11, 2001*, 03-MC-1570 (GBD) (SN), 2021 WL 5449825, at *10-11 (S.D.N.Y. Nov. 22, 2021). The seven factors are: (1) the importance to the investigation or litigation of the

5

documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located; (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery. *Id.* (citing *Wultz v. bank of China Ltd.*, 910 F. Supp. 2d 548, 552-53 (S.D.N.Y. 2012)).

Here, while the parties do not contest that production of the Foreign Regulators' Reports implicates Pakistani laws prohibiting disclosure of such records, Plaintiffs argue that the United Arabs Emirates ("UAE") law cited by Defendant does not prohibit such disclosure by HBL. However, Defendant supports their position with an expert declaration which states that sending any document regarding a matter that is the subject of an investigation by CBUAE, regardless of whether it contains customer information, would violate UAE Banking law and expose Defendant to potential civil and criminal penalties. (*See* ECF 348 at 9); (ECF 350-2 ¶¶ 5-14). The Court presumes for the sake of argument that production would violate UAE law and analyzes each comity factor below.

### i. *Importance to the Litigation*

The first factor considers the importance of the documents to the litigation. As discussed above, the Foreign Regulators' Reports are directly relevant to establish the scienter requirement as to HBL's culpability under the ATA on a theory of secondary liability, as they may help establish that HBL was on notice that its accounts were being used to fund terrorism

6

and is evidence of their adherence to proper compliance procedures. This factor strongly favors Plaintiffs.

### ii. The Degree of Specificity of the Request

The second factor also weighs in favor of Plaintiffs. Plaintiffs have offered to narrow the scope of their request to four categories of documents dating from January 1, 2006, to December 31, 2019, and has offered to further narrow their requests to only those "expressly referenced in the complaint." *See e.g., Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 421 (S.D.N.Y. 2016). Although Plaintiffs' requests may be further narrowed, Plaintiffs have made clear attempts to narrow their requests based on the information available. Accordingly, this factor weighs in favor of Plaintiffs.

### iii. Whether the Information Originated in the United States

It is uncontested that the Foreign Regulators' Reports did not originate in the United States. Accordingly, this factor weight in favor of Defendants. *See Bartlett et al. v. Société Générale De Banque au Liban Sal, et al.*, 19-CV-0007, 2023 WL 2734641, at *12 (E.D.N.Y. Mar. 31, 2023) ("While this fact underscores the importance of a careful comity analysis, it is not fatal to Plaintiffs' motion.").

### iv. Availability of Alternative Means of Securing the Information

This factor also strongly weighs in favor of Plaintiffs. Defendants simply contend that Plaintiffs should have sought the reports themselves, but Plaintiffs argue that the Foreign Regulators' Reports are only accessible to Defendant (as they are in Defendant's physical possession), and because the Pakistani and UAE regulators already rejected HBL's requests to share the documents with Plaintiffs, similar requests from Plaintiffs are likely to be rejected as

7

well. (ECF 338 at 11); (ECF 364 at 6). The Court is "skeptical that alternative means will result in production, particularly in the absence of a court order." *Averbach v. Cairo Amman Bank*, 19-CV-0004 (GHW) (KHP), 2025 WL 504612, at *5 (S.D.N.Y. Feb. 14, 2025). Accordingly, this factor weighs in favor of Plaintiffs.

### v. Hardship of Compliance

The first hardship for Defendant is the risk of violating Pakistani and UAE law. Defendant argues that such violations expose Defendant and its employees to civil and criminal penalties, fines, potential imprisonment, and potential revocation of its banking license. However, Defendant has failed to point to any specific instances where Pakistani or UAE regulators have sanctioned a bank for disclosing documents in compliance with a U.S. court order that violated these countries' bank secrecy laws, and have provided no evidence that indicates how *likely* such an enforcement action might be. While punishment for violating these laws is *possible*, such fears are currently "purely speculative," and courts have found such arguments unpersuasive. *See Miller v. Arab Bank, PLC*, 18-CV-2192 (HG) (PK), 18-CV-4670 (HG) (PK), 2023 WL 2731681, at *13-14 (E.D.N.Y. Mar. 31, 2023). Accordingly, this favor weighs, albeit slightly, in favor of Defendant based on a speculative risk of enforcement.

### vi. Competing Interests of States Involved

Courts typically weigh most heavily the competing interests of the states involved. *Miller*, 2023 WL 2731681, at * 11. "It has been repeatedly recognized that the United States has an obvious interest in having its own procedural rules applied to discovery, which is strengthened where the discovery is vital to the litigation." *Id.* at *12 (internal quotations omitted). "It is also indisputable that the United States has a strong interest in combating

8

terrorism[,] and … [w]hen the United States' substantial interest in fully and fairly adjudicating matters before its courts is combined with its goals of combatting terrorism, its interest is elevated to nearly its highest point." *Id.*

Defendant argues that production of the Foreign Regulators' Reports would undermine Pakistani, UAE, and U.S. interests in maintaining the confidentiality afforded by a state's laws and regulations and remedial behaviors needed to enhance bank security. (ECF 348 at 20). Specifically, Defendant contends such confidentiality is a "powerful incentive to ensure banks cooperate with authorities," and the failure to uphold such laws could expose banks to increased cybersecurity threats and damage banks' reputation and stability, and may "have reciprocal consequences for the treatment of U.S. banks in foreign courts." (*Id.* at 21). Defendant also cites to *Wultz v. Bank of China Ltd.*, arguing that producing "non-public regulatory documents of a foreign government may infringe the sovereignty of the foreign state and violate principles of international comity to a far greater extent." 910 F. Supp. 2d 548, 556 (S.D.N.Y. 2012). In the alternative, Plaintiffs rely heavily on the U.S.'s interests in combatting terrorism and point to Pakistan and the UAE's own demonstrated interests in preventing terrorist financing.[1]

As other courts in this Circuit have held, "[t]here is no doubt that maintaining bank secrecy is an important interest. However, that interest is outweighed by the United States' vital interest in combating terrorism and compensating victims of terrorist attacks." *Miller*,

---

[1] For example, Plaintiffs point to the fact that both Pakistan and the UAE are members of international task forces that have adopted recommendations on combating money laundering and terrorism financing, both countries are part of regional financial task forces, and both countries have domestic legislation demonstrating their interests in "elevating international cooperation on terrorism finance over bank secrecy concerns." (*See* ECF 338 at 18).

9

2023 WL 2731681 at *13 (internal citations omitted). Defendants have pointed to nothing that contravenes this well-founded principle, and *Wultz* is distinguishable from this case. In *Wultz*, Judge Scheindlin declined to order the "production of confidential regulatory documents *created by the Chinese government* whose production is clearly prohibited under Chinese law" because the parties had not sufficiently briefed the issue. *Wultz*, 910 F. Supp. 2d at 556. (emphasis in original) ("[T]he issue of whether to order BOC to produce confidential Chinese governmental regulatory documents in violation of other Chinese laws prohibiting such production has not been sufficiently analyzed or briefed."). *Wultz* does not stand for the proposition that just because the documents at issue were created by a foreign government, that the interests of the nations at issue factor weighs against production. To the contrary, *Wultz* suggests that where a plaintiff seeks production of documents created by a foreign government, it is inappropriate to compel production under the comity analysis unless the parties have briefed the issue. *Id.* at 556 n. 47 (citing *Aérospatiale*, 482 U.S. at 546 ("American courts should … take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.")). Here, while the Foreign Regulators' Reports are documents produced by a foreign government, the parties have certainly engaged in thorough, substantive briefing and given the Court sufficient material to analyze in coming to its conclusion. With the benefit of the parties' exhaustive briefing, the Court finds that the U.S.'s interest in combating terrorism and compensating victims of terrorist attacks outweighs the confidentiality interests at issue.

       Accordingly, this factor weighs in favor of production.

### vii. Defendant's Good Faith

The parties dispute whether HBL "agreed" to seek authorization from the Foreign Regulators to produce the reports. Plaintiffs suggest HBL agreed to seek permission early on in discovery and failed to do so, thereby engaging in delay tactics. Defendant argues they never made such a representation, and initially objected to production of the Foreign Reports as early as December 2022. Defendant also argues that Plaintiffs delayed in "pressing their request" over Defendant's objections to production. HBL did not affirmatively seek authorization from the Foreign Regulators until October 2024 after being directed to do so by the Court. (ECF 330). At this juncture, there is yet insufficient evidence to find that either party has engaged in bad faith. Accordingly, this factor does not weigh for or against production.

### viii. Weighing the Factors

After considering the seven comity factors, and having given them the appropriate weight, I find that the comity test weighs in favor of granting Plaintiffs' motion to compel the Foreign Regulators' Reports notwithstanding the applicability of foreign bank secrecy laws. Accordingly, Plaintiffs' motion to compel is **GRANTED.**

### III. CONCLUSION

For reasons stated above, motion to compel is **GRANTED**. Defendant is directed to produce the Foreign Regulators' Reports by **April 14, 2025.**

**SO ORDERED.**

Dated: March 31, 2025
New York, New York

/s/ Ona T. Wang
**Ona T. Wang**
United States Magistrate Judge