SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

―――――

SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TX 77002-5096
(713) 651-9366

SUITE 1400
1900 AVENUE OF THE AMERICAS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100

SUITE 3000
401 UNION STREET
SEATTLE, WASHINGTON 98101-2683
(206) 516-3880

May 30, 2025

**BY ECF**

The Honorable Ona T. Wang
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:** *King v. Habib Bank Limited*, Case No. 1:20-cv-04322-LGS-OTW, Joint Status Letter

Dear Judge Wang:

The parties jointly submit this status letter to apprise the Court regarding the current status of discovery and the issues discussed at the April 2, 2025 status conference.

### I. Pending Privilege Dispute

As discussed at the April 2, 2025 status conference, the parties' dispute regarding the sufficiency of HBL's privilege log remains pending before the Court. *See* Dkt. No. 398 at 2:23-3:5.

### II. Foreign Regulator Reports and Additional Requests from Plaintiffs

As discussed in the parties' May 16, 2025 joint status letter (Dkt. 406), pursuant to this Court's March 31, 2025 and April 9, 2025 Orders (Dkts. 395, 401), HBL completed its production of the "Foreign Regulator Reports" on May 5, 2025. The parties are currently discussing follow-on discovery requested by Plaintiffs arising from those productions, as briefly outlined below:

**Plaintiffs' Position:** Plaintiffs have diligently reviewed the additional documents produced by HBL and take no position at this time regarding whether HBL has fully satisfied the Court's order to produce the Foreign Regulator Report materials. Nevertheless, Plaintiffs' review of the foreign regulator documents indicates that the transactional data and account records produced by HBL in this case lack information regarding certain accountholders that are responsive to Plaintiffs' discovery requests.

Specifically, one of reports from the State Bank of Pakistan—and related correspondence—noted that HBL had processed transactions on behalf of several "proscribed

May 30, 2025
Page 2

individuals" under Pakistan's Anti-Terrorism Act. Plaintiffs compared the list of individuals to the data and account records previously produced by HBL. That comparison led Plaintiffs to the conclusion that HBL's prior productions lacked information on 28 specific accountholders. The missing information included: (a) terrorists on Plaintiffs' prior list that HBL had not provided any information for in this case to date; (b) terrorists on Plaintiffs' prior list that HBL had produced some information on, but not the specific accounts identified in the State Bank of Pakistan report/correspondence; and (c) a small number of additional terrorists that HBL clearly was aware of when discovery commenced as a result of the State Bank of Pakistan report/correspondence. Plaintiffs identified those omissions to HBL on May 21, 2025 and requested those documents to be produced by June 6, 2025.

The parties are now conferring on whether HBL will produce the requested records. Plaintiffs disagree with HBL's arguments below, as will be explained more fully if motion practice becomes necessary. Moreover, the burden associated with producing the records associated with 28 specific accountholders (whose account numbers are already known to HBL as a result of the State Bank of Pakistan report/correspondence) is bound to be minimal. While HBL is continuing to review what it deems to be "new" requests, Plaintiffs anticipate that if HBL refuses to produce the requested records then additional (and unwarranted) motion practice is likely to result.

**HBL's Position:** HBL is closely reviewing Plaintiffs' new requests, which include requests for account information associated with names that are not apparent matches to *any* names on Plaintiffs' list of more than 550 names. In 2022, the parties agreed to narrow Plaintiffs' discovery requests to the names on Plaintiffs' lists, which expanded to 550+ names in 2023. That is how the parties have proceeded for the last three years, and how Plaintiffs represented their requests to the Court. *See, e.g.*, Pls. Mem. 4 (Feb. 2, 2024), ECF No. 211 (representing to the Court that Plaintiffs "*narrowly tailored their discovery requests* to 174 unique individuals and/or entities, totaling approximately 550 names when counting their aliases" (emphasis added)); *King*, 2023 WL 3558773 at *2 (granting Plaintiffs' motion to compel account information for specific names requested on Plaintiffs' lists). There is thus no "missing information" with respect to these names.

Plaintiffs do not (and cannot) rebut that any account information relating to these new names is thus plainly nonresponsive to Plaintiffs' purportedly "narrowly tailored" requests. Instead, Plaintiffs recast those "narrowly tailored" requests as their "*prior* list" — effectively admitting that Plaintiffs are making *new* discovery requests at the tail end of the fact-discovery period, and thus directly contravening this Court's clear instructions. *See* Oct. 9, 2024 Tr. 52:14-15 (Plaintiffs' counsel requesting fact-discovery extension and clarifying, "it's not so much we're trying to get new discovery"); *id*. at 53:15-18 (the Court granting Plaintiffs' request for an extension and confirming, "I also want to understand, though, that there's not any new request being propounded. We're really focusing on cleaning up and finishing what's been sought and understanding what's going to be produced from what's being requested.").

Moreover, Plaintiffs misrepresent the nature of the information that they are seeking in a blatant attempt to prejudice the Court. Contrary to Plaintiffs' intemperate rhetoric in describing each of the names on their new list as "terrorists," in fact, as HBL has already explained to Plaintiffs, most of the 28 names that Plaintiffs identify in their new requests were either removed from the "proscribed individuals" list, or were never on that list at all. And as HBL has also explained to Plaintiffs, HBL's review of Plaintiffs' recent requests thus far demonstrates that

May 30, 2025
Page 3

account information relating to several of the names identified by Plaintiffs is nonresponsive, including because the names identified by Plaintiffs (i) are not on any OFAC or UN sanctions lists, or (ii) are false-positive matches to names on sanctions lists, i.e., the personally identifiable information ("PII') for the names on Plaintiffs' new list does not match the PII for similar names on the sanctions lists. Plaintiffs' referring to these accountholder names as "terrorists" does not make them so. There is no "missing information" with respect to false positives like these. Plaintiffs can see for themselves on the face of the information produced that those accountholders are false positives. Moreover, for accountholders that were later sanctioned or proscribed, HBL took appropriate action in freezing the accounts.

HBL is collecting information on the remaining names to determine whether they are responsive to Plaintiffs' discovery requests, and will provide Plaintiffs any additional information as soon as it can. Because HBL has not completed its review, there is no dispute that is ripe for the Court's attention.

### III. Checks and Transactional Data Ordered by the Court

On March 31, 2025, the Court also ordered HBL to produce checks and additional transactional data. *See* Dkt. No. 394. The Court further ordered the parties to meet and confer regarding the scope of the checks and data to be produced. *See* Dkt. No. 396. Subsequently, the parties reached an agreement regarding the scope of the paper checks to be produced and on the production of certain transactional data. *See* Dkt. No. 406. HBL has agreed to produce this information on a rolling basis and to complete it by July 31, 2015. HBL has been searching for the applicable paper checks and began its rolling productions on May 29, 2025.

### IV. Reopening 30(b)(6) Deposition

As discussed at the April 2, 2025 status conference, the parties will continue discussing the need to potentially reopen the 30(b)(6) deposition of HBL or ask questions by other less burdensome means, such as through written questions. *See* Dkt. No. 398 at 3:6-10.

Respectfully submitted,

*/s/ Ian M. Gore*
Ian M. Gore (IG2664)
Katherine M. Peaslee (*Pro Hac Vice*)
Danielle Nicholson (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883
igore@susmangodfrey.com
kpeaslee@susmangodfrey.com
dnicholson@susmangodfrey.com

May 30, 2025
Page 4

Seth D. Ard (SA1817)
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001-8602
Tel: (212) 336-8330
Fax: (212) 336-8340
sard@susmangodfrey.com

Steven Sklaver (*Pro Hac Vice*)
Michael Adamson (MA9434)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
ssklaver@susmangodfrey.com
madamson@susmangodfrey.com

Ryan Sparacino (*Pro Hac Vice*)
Tejinder Singh (TS0613)
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
ryan.sparacino@sparacinopllc.com
tejinder.singh@sparacinopllc.com

*Counsel for Plaintiffs*

/s/ Claire A. DeLelle with permission
Christopher M. Curran
Claire A. DeLelle
Celia A. McLaughlin
Michael Mahaffey (*Pro Hac Vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:     + 1 202 626 3600
Facsimile:     + 1 202 639 9355
ccurran@whitecase.com
cdelelle@whitecase.com
cmclaughlin@whitecase.com
michael.mahaffey@whitecase.com

*Counsel for Habib Bank Limited*