UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEVIN KING, et al., :
:
                Plaintiffs, : 20-CV-4322 (LGS) (OTW)
:
                -against- : **OPINION & ORDER**
:
HABIB BANK LIMITED, :
:
                Defendant. :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

Pending before the Court is the parties' dispute as to various of Habib Bank Limited's ("HBL's") privilege log entries. Plaintiffs contest tens of thousands of HBL's privilege log entries and seek an order directing HBL to produce documents for each deficient entry. The Court previously ordered the parties to agree to a sampling process and submit a sample of contested entries for *in camera* review. Having review the sample of contested entries *in camera*, and for the reasons discussed below, Plaintiffs' request is **GRANTED in part, DENIED in part**.

    **I.**    **BACKGROUND**

In the parties' April 26, 2024, joint status letter, Plaintiffs identified a brewing privilege dispute concerning as many as 9,000 privilege log entries that they identified as deficient. (ECF 241 at 3-4). The dispute carried on for several months, (*see* ECF Nos. 263, 274), and in the parties' July 12, 2024, joint status letter, Plaintiffs requested that the Court review *in camera* a sample of the disputed entries. (ECF 274). The Court memo endorsed the parties' July 12 joint status letter and directed the parties to meet and confer on a methodology and schedule for sampling the contested privilege log entries. (ECF 281). The Court adopted the parties' proposed sampling methodology on July 31, 2024, and directed the parties to submit 3-page

briefs and the sample of documents to Chambers by email by August 8, 2024. (ECF 286). The parties' submissions were received by email on August 8, 2024.

Ahead of the status conference scheduled for October 9, 2024, the parties filed a joint agenda on October 4, 2024. (ECF 317). The parties' joint agenda identified, among other things, the parties' ongoing privilege dispute and *in camera* submissions. Construing the parties' inclusion of the privilege dispute in the joint agenda as a new request, which was already fully briefed, the Court then issued an Order on October 8, 2024, denying ECF 317 as moot based on the parties' already agreed-upon sampling methodology for contested privilege-log entries. (ECF 318). The Court's October 8 Order did not rule on the parties' ongoing privilege log dispute.

On April 21, 2025, I directed the parties to file the letters briefs that have been previously submitted *in camera* on the docket. (ECF 403). The parties filed their briefs on April 22, 2025, (ECF 404), and April 23, 2025. (ECF 405).

**II.    LEGAL STANDARD**

   A.   Privilege Logs Under the Local and Federal Rules

"When a party withholds information otherwise discoverable by claiming that the information is privileged …, the party must … describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privilege or protected, will enable other parties to assess the claim." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 20-CV-7472 (GHW), 2025 WL 1434375, at *3 (S.D.N.Y. May 17, 2025) (citing Fed. R. Civ. P. 26(b)(5)(A)(ii)). Local Rule 26.2 also sets out the specific information that must included in a privilege log, including: (1) the type of

2

document; (2) the general subject matter; (3) the date; and (4) the author of the document, the addresses, and any other recipients. L. Civ. R. 26.2(a)(2)(A).[1] A privilege log should also contain "a brief description or summary of the contents of the document" and "the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document." *WCA Holdings*, 2025 WL 1434375, at *3 (citing *Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 93 (E.D.N.Y. 2019)).

When assessing the adequacy of a privilege log, a court must determine whether each element of the privilege or immunity that is claimed has been met. *Id.* (citing *Norton v. Town of Islip*, 04-CV-3079 (PKC) (SIL), 2017 WL 943927, at *2 (E.D.N.Y. Mar. 9, 2017)). *See also Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y 1993) (reasoning that privilege logs must "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure."). "[T]he burden of establishing the elements of the purported privilege rests on the party asserting the protection from disclosure." *WCA Holdings*, 2025 WL 1434375, at *3. If a privilege log entry is too vague, the party asserting privilege may waive privilege. *See McNamee v. Clemens*, 2014 WL 1338720, at *4-5 (E.D.N.Y. Apr. 2, 2014) (holding that "'unhelpful' and 'vague' descriptions were insufficient to sustain burden of showing documents were privileged). However, courts typically reserve a finding of waiver for "flagrant" violations. *See Dey, L.P. v. Sepracor, Inc.*, 07-CV-2353 (JGK) (RLE), 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010).

---

[1] Where not apparent, the party asserting privilege must also include the relationship of the author, addresses, and recipients to each other. L. Civ. R. 26.2(a)(2)(A).

### B. Attorney-Client Privilege

Generally, parties may obtain discovery on any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Communications that are protected by the attorney-client privilege, however, are shielded from discovery. *Hayden v. Int'l Bus. Machs. Corp.*, 21-CV-2485 (VB) (JCM), 2023 WL 4622914, at *3 (S.D.N.Y. July 14, 2023). "Attorney-client privilege protects 'communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.'" *Id.* (quoting *U.S. v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)). Where, as here, a case contemplates federal and state law claims, federal law governs assertions of privilege. *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 13-CV-8997 (JPO) (GWG), 2015 WL 3450045, at *2 (S.D.N.Y. May 28, 2015).

Attorney-client privilege only applies where the communication in question is "primarily or predominantly of legal character." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). Where a party only asserts privilege over a limited portion of a document, courts in this Circuit "routinely consider the predominant purpose of [the] isolated portion." *In re Google Digital Advertising Antitrust Litigation*, 21-MD-3010 (PKC), 2023 WL 196146, at *2 n. 1 (S.D.N.Y. Jan. 17, 2023). "The burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship," and they "must do so by competent and <u>specific evidence</u>, rather than by conclusory or *ipse dixit* assertions." *Hayden*, 2023 WL 4522914, at *3 (emphasis added).

4

### III. DISCUSSION

#### A. HBL's Identification of Counsel on Its Privilege Log

First, Plaintiffs assert that by failing to properly "identify the counsel whose advice and/or work product is supposedly at issue," HBL has failed to sustain its burden of showing privilege over 10,312 various entries, and request that HBL be compelled to produce documents pertaining to each deficient entry. (ECF 404-1) (Plaintiffs' 3-page letter brief). Plaintiffs' chief complaint is that HBL failed to identify who, among the several individuals listed among the "From Email," "To Email," or "CC Email" columns is the attorney whose advice and/or work product is the basis of the privilege. (ECF 404-1 at 1). Plaintiffs also suggest that they cannot "detect which, if any, email domains correspond with law firms," and that such "guess work" improperly shifts the burden to Plaintiffs to disprove HBL's privilege assertions. (*Id.*).

The primary case that Plaintiffs rely on, *In re Rivastigmine Patent Litig.*, does not support such a finding. 237 F.R.D. 69, 84 (S.D.N.Y. 2006). In that case, Judge Francis explained that the plaintiffs failed to support their privilege claims when they identified "the legal professionals whose participation g[ave] rise to the privilege claim" as a "department." *Id.* at 83. Here, the entries at issue list a number of individuals, not just a "department" of HBL. Still, the parties' stipulated protective order sets out that for each entry on a privilege log, the party asserting the privilege should identify which individual(s), if any, are counsel, (*see* ECF 88 at 11), and the sample entries from HBL's privilege log does not appear to specifically identify which individuals are counsel. This violation is not so "flagrant," however, to justify a finding that HBL has failed to establish privilege over these 10,000+ privilege log entries, *see Dey, L.P.*, 2010 WL 5094406,

particularly given that Plaintiffs could examine the names and emails that HBL has provided and make a reasoned determination after a simple search to see if any of those individuals are legal counsel.

Accordingly, Plaintiffs motion is **DENIED in part** with respect to these entries, but HBL is directed to revise these privilege log entries to clearly identify the counsel whose advice is at issue.

### B.  Documents Withheld on the Basis of Work-Product Protection

Next, Plaintiffs suggest that HBL has failed to carry its burden with respect to 9,023 privilege log entries that claim work-product protection, and ask that HBL be compelled to produce these documents. (ECF 404-1 at 2). First, Plaintiffs assert that HBL has "broadly claimed that any communication 'concerning regulation compliance' qualifies for work-product protection, without identifying any anticipated litigation." (*Id.*).

"The work-product doctrine is distinct from and broader than the attorney-client privilege." *Ramchandani v. CitiBank Nat'l Ass'n*, 19-CV-9124 (VM) (SDA), 2022 WL 2156225, at *5 (S.D.N.Y. June 15, 2022). A party asserting work-product protection must show that the withheld information: (1) is a document "or a tangible thing;" (2) that was prepared in anticipation of litigation; and (3) by or for a party, or by their representative. *Id.* The Second Circuit has adopted a broad definition of "in anticipation of litigation:" "[i]n anticipation of litigation means that in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (internal quotation marks omitted).

While general regulatory advice may not qualify for work-product protection since such documents would be prepared in the ordinary course of business, *see Durling v. Papa John's Int'l, Inc.*, 16-CV-3592 (CS) (JCM), 2018 WL 557915, at *7 (S.D.N.Y. Jan. 24, 2018),[2] documents created in response to a regulatory investigation that carries the threat of future litigation may well qualify for work-product protection. *See In re Cardinal Health, Inc. Sec. Litig.*, C2-04-575 (ALM) (JP), 2007 WL 495150, at *5 (S.D.N.Y. Jan. 26, 2007) ("[T]he Second Circuit has held that the work product doctrine applies when outside counsel is retained to determine the vulnerability of the corporation in general to criminal and civil sanctions.").[3] HBL asserts that the documents in question are attachments that were created, collected, and sent to outside counsel for review "as part of the counsel-directed transaction review process" in response to regulatory investigations. (ECF 405 at 2). The documents that HBL submitted for *in camera* review confirm as much—each appear on their face to be related to one or more regulatory investigations by U.S. federal or state regulatory agencies, and thus covered by the work-product protection.

In the alternative, Plaintiffs suggest that by destroying the custodial files of Sima Kamil, a former employee, HBL has engaged in spoliation which justifies disclosure of the 9,023 documents. While some courts have found that, for the purposes of a spoliation analysis, a party asserting work-product protection implicitly admits that they reasonably anticipated

---

[2] "If, regardless of the prospect of litigation, the document would have been prepared anyway, in the ordinary course of business or in essentially similar form, it is not entitled to work product protection." *Durling*, 2018 WL 557915, at *7.

[3] *See also In re Woolworth Corp. Secs. Class Action Litig.*, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996) ("All participants knew when Paul, Weiss became involved [to investigate serious allegations of securities violations] that litigation—civil, and possibly criminal—as well as regulatory action were virtually certainties.").

7

litigation, *see Anderson v. Sotheby's Inc. Severance Plan*, 04-CV-8180 (SAS), 2005 WL 2583715, at *4 (S.D.N.Y. Oct. 11, 2005), the Court declines to find that production of these documents is an appropriate remedy for the loss of Kamil's documents. Plaintiffs have failed to explain how the destruction of an unknown number of certain custodial files (whether intentional or not) is appropriately remedied by stripping work-product protections from 9,023 documents under Fed. R. Civ. P. 37(e)(1), or produce any evidence suggesting that the destruction of documents was done with the "intent to deprive" necessary under 37(e)(2). *See Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020).

Accordingly, Plaintiffs' motion is **DENIED without prejudice** with respect to documents withheld on the basis of work-product protection. The parties are directed to meet and confer regarding the loss of Kamil's documents and what remedies, if any, are appropriate.

### C. Documents Withheld on the Basis of the Suspicious Activity Report ("SAR") Privilege

Plaintiffs assert that for 4,808 entries on HBL's privilege log, HBL has over-redacted and/or over-withheld factual and other information not properly subject to a legal privilege or other protection. (ECF 404-1 at 3). HBL contends that it only redacted or withheld information regarding the identity and nature of the subject of a SAR, and that the underlying facts, transactions, and documents have been produced "where that information exists outside the SAR determination itself." (ECF 405 at 2).

Under the Bank Secrecy Act, 31 U.S.C. §§ 5311 *et seq.* ("BSA"), and implementing regulations promulgated by the Financial Crimes Enforcement Network ("FinCEN")—the agency with which SARs are filed—national banks are required to file SARs "when they detect a known or suspected violation of Federal law or a suspicious transaction related to a money laundering

activity or a violation of the [BSA]." 12 C.F.R. § 21.11 (2022). "To create an environment that encourages a national bank to report suspicious activity without fear of reprisal, the regulations hold that SARs and any information that would reveal the existence of a SAR, are confidential, and shall not be disclosed, with limited exceptions." *Trott v. Deutsche Bank, AG*, 20-CV-10299 (DEH), 2024 WL 1994342, at *2 (S.D.N.Y. May 6, 2024) (internal citations omitted). The "underlying facts, transactions, and documents upon which a SAR is based" are not protected from disclosure. *Id.* For instance, in *Trott*, Judge Ho determined that Deutsche Bank's "Suspicious Activity Information Forms," internal documents used to evaluate whether to file a SAR, were not covered by the SAR Privilege and should be produced. *Id.* at 2-3.

Having reviewed the sample documents *in camera*, the Court concludes that HBL has not over-redacted or over-withheld information. The information redacted is not simply factual information upon which a SAR is or may be based—rather, the redactions are applied to information pertaining to SARs themselves or that could be readily used, in combination with other assumedly available information, to identify a SAR. This information falls squarely under FinCEN regulations. *See* 12 C.F.R. § 21.11 (k). HBL's redactions also appear narrowly tailored. For example, in log entry 7745, HBL makes a small number of redactions to eight out of 135 pages, all of which appear proper on their face. Moreover, HBL represents that they have already produced the underlying facts, transactions, and documents on which SARs are based, outside of the SAR itself.

Accordingly, Plaintiffs' motion is **DENIED** with respect to documents redacted and/or withheld on the basis of the SAR privilege.

D. Documents Concerning Communications to Third Parties

Plaintiffs also assert that HBL has improperly asserted privilege over communications with five third parties: (1) Accume Partners ("Accume"); (2) Aga Khan Development Network ("Aga Khan"); (3) Alvarez and Marsal ("A&M"); (4) Institute of Business Administration – Karachi ("IBA"); and (5) Ernst & Young ("EY").

1. EY and IBA

HBL asserts that communications with EY and IBA are protected under the *Kovel*[4] doctrine as communications made in connection with and to help facilitate the provision of legal advice. (ECF 405 at 3). EY was retained by HBL to assist HBL's outside counsel, Debevoise & Plimpton, in connection with improving HBL's compliance programs and ongoing regulatory examinations. (*Id.*). HBL asserts that IBA was retained to facilitate and provide "technical assistance" for a compliance training provided to HBL's Board of Directors by Shearman & Sterling. (*Id.*).

Under the *Kovel* doctrine, courts in this Circuit have extended the attorney-client privilege to communications between a client and a third party that "clarifies or facilitates communication between attorney and client in confidence for the purpose of obtaining legal advice from the attorney." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 70-71 (S.D.N.Y. 2010) (internal quotation marks omitted). Courts have construed *Kovel* to include communications with "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences." *Id.* at 71. For the *Kovel* doctrine to

---

[4] *See U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961).

apply, "the attorney must have been relying on the third party advisor to translate or interpret information given to the attorney by his client, not to provide information that the client did not already have." *Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, 19-CV-9193 (PGG) (SLC), 2023 WL 315072, at *8 (S.D.N.Y. Jan. 19, 2023).

Having reviewed the documents submitted *in camera*, the Court concludes that the communications made between HBL, their counsel, and EY were made for the purpose of clarifying or facilitating the communication of legal advice. Thus, attorney-client privilege does apply to these communications under the *Kovel* doctrine. However, nothing about the sampled communications with IBA submitted *in camera* suggest that these communications were made with the purpose of facilitating or clarifying legal advice. The sampled communications with IBA appear to be related to administrative work (e.g., scheduling)—these communications would not be privileged if they were sent by HBL's counsel, and thus there is no privilege to extend to under *Kovel*.

Accordingly, Plaintiffs' motion is **GRANTED** as to communications with IBA and **DENIED** as to communications with EY.

2. A&M and Accume

HBL asserts that communications with A&M and Accume are protected under the functional-equivalent doctrine as communications with third parties that "perform a corporate function that was necessary in the context of a government investigation." (ECF 405 at 3) (citing *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 220 (S.D.N.Y. 2001)).

As Plaintiffs recognize, the Second Circuit has yet to adopt the functional-equivalent doctrine, and where courts in this Circuit have considered its application, they have done so

11

with skepticism and cautioned that its application should be construed narrowly, if at all. *See Monterey Bay Military Housing*, 2023 WL 315072, at *9; *see also Walsh v. CSG Partners, LLC*, 544 F. Supp. 3d 389 (S.D.N.Y. 2021) ("The Second Circuit has not yet adopted that doctrine; and some district courts have expressed skepticism about whether it would do so. This Court will not attempt to divine the answer to that question here, because even if the doctrine applied, its requirements would not be met."); *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213 (E.D.N.Y. 2019) (same). Where courts do apply the doctrine, six factors should be considered:

> (1) Whether the consultant had a primary responsibility for a key corporate job; (2) whether the consultant had a continuous and close working relationship with the company's principals on matters critical to the company's position in litigation; (3) whether the consultant is likely to possess information possessed by no one else at the company; (4) whether the consultant exercised independent decision-making on the company's behalf; (5) whether the consultant served as a company representative to third parties; and (6) whether the consultant sought legal advice from corporate counsel to guide his or her work for the company.

*Walsh*, 544 F. Supp. 3d at 392. "[T]he proponent of the functional equivalent doctrine bears the burden of establishing that it applies." *Monterey Bay Military Housing*, 2023 WL 315072, at *9. For example, in *In re Copper Market*, "the court deemed employees of a 'crisis management' public relations firm retained by a Japanese company faced with a trading scandal to be functionally equivalent to the company's employees. The company hired the firm because it lacked experience with the Western media, … as well as experience with the publicity that accompanies high-profile litigation." *In re Restasis*, 352 F. Supp. 3d at 213 (citing *In re Copper Market*, 200 F.R.D. at 215, 220)). Notably, the public relations firm was authorized to make

12

decisions on the company's behalf and "sought advice from corporate counsel to formulate a public relations strategy." *Id.*

HBL has failed to provide a sufficient basis from which the Court can conclude that A&M and Accume were acting as functional equivalents of the company. For instance, HBL has not alleged, nor does *in camera* review of the sample documents suggest, that A&M or Accume performed a "key corporate job." While HBL suggests that A&M and Accume were retained to "address issues raised in the regulatory examinations for which HBL lacked sufficient resources in-house to manage on its own," (ECF 405 at 3), HBL has failed to describe its own corporate structure in relation to the regulatory investigations or what A&M and Accume were even retained to do. *See Walsh*, 544 F. Supp. 3d at 393. Nor has HBL asserted that A&M and Accume were in possession of information that nobody else at HBL possessed, or that they were empowered to make decisions on behalf of HBL.

Accordingly, HBL has not established that communications with A&M and/or Accume are protected under attorney-client privilege and the functional equivalent doctrine, and Plaintiffs' motion is **GRANTED** with respect to these documents. HBL is directed to produce communications with A&M and Accume that were previously withheld on the basis of privilege and the functional-equivalent doctrine.

3. *Aga Khan*

Finally, HBL asserts that communications with Aga Khan are privileged because they were sent by HBL's general counsel, Nausheen Ahmad, to Shaffiq Dharamshi ("Dharamshi"), a member of HBL's Board of Directors who happens to hold a role in Aga Khan.

Generally, communications between an in-house attorney and their client regarding legal matters is privileged. *See In re Signet Jewelers Ltd. Secs. Litig.*, 332 F.R.D. 131, 137 (S.D.N.Y. 2019). However, in cases involving corporations and in-house counsel, "courts have maintained a stricter standard for determining whether to protect confidential information through the attorney-client privilege." *TIG Ins. Co. v. Swiss Reinsurance Am. Co.*, 21-CV-8975 (NSR) (JCM), 2023 WL 6058649, at *3 (S.D.N.Y. Sept. 18, 2023). *Ipse dixit* assertions are insufficient to carry a party's burden of establishing that a legal privilege applies. *Hayden v. Int'l Bus. Machs. Corp.*, 21-CV-2485 (VB) (JCM), 2023 WL 4622914, at *3 (S.D.N.Y. July 14, 2023).

Here, even assuming that communications between in-house counsel and a member of HBL's Board of Directors to a board member's e-mail maintained at a separate organization could still be a privileged communication, review of the documents submitted *in camera* does not suggest that these communications are indeed privileged. HBL merely asserts that the communications are "privileged emails" sent by in-house counsel to Dharamshi in his role as a director. (ECF 405 at 3). However, none of the sampled documents appear on their face to provide or relate to the provision of legal advice. Conclusory assertions that the communications are privileged are insufficient to carry HBL's burden of demonstrating that the attorney-client privilege attaches. *Hayden*, 2023 WL 4622914, at *3.

Accordingly, HBL has not established that communications with Aga Khan are protected under the attorney-client privilege, and Plaintiffs' motion is **GRANTED** as to these documents.

### E. Other Categories of Documents

Lastly, Plaintiffs allege that (1) for 15,616 entries on HBL's privilege log, HBL failed to identify the author, sender, and/or recipients of the documents; and (2) for 7,196 entries, HBL

14

failed to describe the nature of the privileged communication and withheld the attachment because it was attached to a privileged email. (ECF 404-1 at 3). HBL contends that its privilege log complies with the stipulated protective order and includes metadata such as the author, sender, and recipients, where available. (ECF 405 at 1). None of the documents submitted for *in camera* review pertain to these purportedly deficient categories of privilege log entries, and the parties agree that *in camera* review is not necessary for these documents.

Plaintiffs' motion is **DENIED without prejudice** to these two remaining categories of privilege log entries. HBL is directed to re-review and revise its privilege logs to include the metadata required by the stipulated protective order, and to meet and confer with Plaintiffs.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is **GRANTED** with respect to communications made to IBA, Aga Khan, A&M, and Accume, and **DENIED** in all other respects. HBL is directed to produce communications with IBA, Aga Khan, A&M, and Accume that were previously withheld on the basis of privilege.

With respect to privilege log entries where Plaintiffs allege HBL failed to identify counsel, (*see* Section III.A. *supra*), HBL is directed to provide Plaintiffs with an exhaustive list of its lawyers and to re-do its privilege log accordingly to highlight which individual on each entry is counsel. The parties are encouraged to meet and confer on how to streamline this process.

With respect to the privilege log entries described in Section E above, (*see* Section III.E. *supra*), HBL is directed to re-do its privilege log to include the missing information identified by Plaintiffs. HBL is reminded that attachments to emails, even where the parent email is privileged, are only privileged if the attachment itself contains or refers to legal advice. *See*

15

*Astra Aktiebolag v. Adrx Pharmas., Inc.*, 208 F.R.D. 92, 103 (S.D.N.Y. 2002) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with an attorney.") (internal quotation marks omitted).

The parties are directed to continue meeting and conferring on HBL's revised privilege log and to discuss ways to prioritize and streamline HBL's re-review and supplemental production.

**SO ORDERED.**

_s/ Ona T. Wang_

Dated: November 18, 2025     **Ona T. Wang**
New York, New York            United States Magistrate Judge