UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN KING et al., Plaintiffs, -against- HABIB BANK LIMITED, Defendant. | 20 Civ. 4322 (LGS) |
| KATHLEEN L. ALEXANDER et al., Plaintiffs, -against- HABIB BANK LIMITED, Defendant. | 21 Civ. 2351 (LGS) |
| MARY BORDER et al., Plaintiffs, -against- HABIB BANK LIMITED, Defendant. | 21 Civ. 6044 (LGS) **OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge:

Bellwether plaintiffs ("Plaintiffs") in these consolidated cases are three Americans who were injured, and seven family members of Americans who were killed, in attacks in Afghanistan between 2011 and 2016 alleged to have been carried out by a syndicate of organizations led by al-Qaeda.[1] Plaintiffs bring this action against Defendant Habib Bank Limited under the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333. Plaintiffs' sole remaining claim is for secondary liability

[1] The proceedings have been stayed as to the remaining plaintiffs.

based on aiding and abetting acts of international terrorism. Familiarity with the underlying allegations and procedural history is assumed. *See generally King v. Habib Bank Ltd.*, No. 20 Civ. 4322, 2022 WL 4537849 (S.D.N.Y. Sep. 28, 2022) (granting in part and denying in part motion to dismiss).

In advance of summary judgment briefing, Plaintiffs move under Federal Rules of Evidence ("Rules") 702, 401 and 403 to exclude (1) portions of the opinions of Defendant's rebuttal expert Robert Grenier, (2) certain data from the Department of Defense's ("DoD") Defense Casualty Analysis System (the "DCAS Data") and (3) the opinions of Defendant's rebuttal expert Brigadier General ("BG") David MacEwen (Ret.). For the reasons below, Plaintiffs' motion is granted in full.

## I. STANDARD

Both parties rely on Rule 702, which governs the admissibility of expert testimony at trial, although the immediate issue is whether the expert opinions should be considered at summary judgment. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Under Federal Rule of Evidence 702, for expert testimony to be admissible, the proponent must demonstrate by a preponderance of the evidence that the testimony is relevant and reliable." *Colwell v. Sig Sauer, Inc.*, 177 F.4th 382, 389 (2d Cir. 2026). "While the proponent of expert testimony has the burden[,] . . . the district court is the ultimate gatekeeper."

*United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020);[2] *accord Wells Fargo Bank, N.A. v. U.S. Life Ins. Co.*, No. 22 Civ. 8606, 2025 WL 2220948, at *20 (S.D.N.Y. Aug 4, 2025). "[T]he inquiry envisioned by Rule 702 is a flexible one," *Jones*, 965 F.3d at 161, and the district court "has broad discretion in the matter of the admission or exclusion of expert evidence," *Ojeda v. Metro. Transp. Auth.*, 41 F.4th 56, 70 (2d Cir. 2022).

In assessing whether expert testimony is relevant, "the trial court should look to the standards of Rule 401." *Bustamante v. KIND, LLC*, 100 F.4th 419, 427 (2d Cir. 2024). Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The definition of relevance under [Rule] 401 is very broad," and "[e]vidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019); *accord United States v. Chirico*, No. 25 Crim. 365, 2026 WL 1760129, at *7 (S.D.N.Y. June 18, 2026).

"If the evidence is relevant, a district court must next determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Bustamante*, 100 F.4th at 427. "The objective of this gatekeeping requirement is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Rutledge v. Walgreen Co.*, 182 F.4th 168, 184 (2d Cir. 2026).

"The reviewing court must also consider Rule 403." *Bustamante*, 100 F.4th at 427. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"As a general rule[,] an expert's testimony on issues of law is inadmiss[i]ble." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *Osprey Media, LLC v. Connatix Native Exch., Inc.*, No. 24 Civ. 1662, 2026 WL 2225874, at *3 (S.D.N.Y. July 27, 2026), *appeal docketed*, No. 26-2305 (2d Cir. Aug. 17, 2026). "Although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Duncan*, 42 F.3d 97, 103 (2d Cir. 1994); *Osprey*, 2026 WL 2225874, at *3.

## II. DISCUSSION

Plaintiffs allege that Defendant aided and abetted acts of international terrorism under 18 U.S.C. § 2333(d). Plaintiffs' claim requires them to show that they were killed or injured by acts of "international terrorism" under the ATA. The parties dispute this issue. Defendant offers evidence to show that Plaintiffs were not victims of terrorism and that Defendant did not facilitate terrorism. The at-issue evidence primarily supports the argument that "international terrorism" under the ATA is limited to acts against civilians and not combatants.

Plaintiffs' instant motion seeks to exclude this evidence in advance of Defendant's motion for summary judgment. To the extent the parties' dispute raises an issue of law, the dispute is resolved by the court and may be resolved at summary judgment. *See Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1039 (2d Cir. 1995); *Wells Fargo Bank*, 2025 WL 2220948, at *8. If the dispute raises an issue of material fact, summary judgment must be denied to allow the trier of fact to resolve the issue. *See Bellin v. McDonald*, 177 F.4th 167, 181

(2d Cir. 2026); Fed. R. Civ. P. 56(a). At trial, the court instructs the jury as factfinder on the legal definition of "international terrorism" under the ATA, and the jury determines whether the facts satisfy those requirements. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 326-27 (2d Cir. 2018).

The motion to exclude is granted because Defendant's evidence is not relevant or helpful in deciding the factual question of whether the underlying conduct satisfies the applicable legal definition of "international terrorism." Rather, the evidence attempts to modify that legal definition in a way that is legally unsupported.

### A. Statutory Framework

The ATA defines "international terrorism" as activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
> (B) appear to be intended --
> (i) to intimidate or coerce a civilian population;
> (ii) to influence the policy of a government by intimidation or coercion; or
> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1). Thus, for conduct to qualify as "terrorism" under the ATA, the conduct must be violent or dangerous, aimed at human life, criminal and taken with the apparent intention to affect civilians or a government in specified ways.

In construing the statute, a court must give effect to the plain meaning of the text Congress enacted and may not introduce limitations that do not appear there. "We must presume that the legislature says in a statute what it means and means in a statute what it says there." *Barbosa da Cunha v. Freden*, 175 F.4th 61, 73 (2d Cir. 2026). "[Courts] must resist reading

words or elements into a statute that do not appear on its face." *United States v. Zhang*, 135 F.4th 44, 54 (2d Cir. 2025).

**B. Grenier's Opinions**

Plaintiffs move to exclude the portions of Grenier's opinions regarding insurgency, including his opinion that the at-issue attacks were the result of an "armed insurgency" rather than "international terrorism." These are paragraphs 25, 41-48, 150 and 151 (bullet 2) of Grenier's Expert Report and related deposition testimony. The motion is granted. The challenged opinions either state impermissible legal conclusions or rest on a dichotomy between terrorism and insurgency that is inconsistent with the definition of "international terrorism" under the ATA and therefore would not assist the factfinder under Rule 702.

Grenier opines that "[i]nternational terrorism involves a cross-border attempt to harm civilians (as opposed to combatants)" and is "quite distinct, both as a matter of common perception and of law, from insurgency." He similarly testifies that, in his view, "in the law, there is a clear distinction made between attacks on civilians versus attacks that are made on combatants" and that he understands the ATA to draw that distinction. He likewise opines that insurgency differs from terrorism because the former "involves attacks primarily on combatants (rather than civilians), and is designed to achieve actual military and political dominance in the contested area, as opposed to relying exclusively on fear and intimidation." Grenier then applies this framework to the at-issue attacks and concludes that they were acts of insurgency rather than terrorism.

Grenier's analysis imposes limitations not found in the ATA's definition of "international terrorism." The statute does not require that victims of international terrorism be civilians. Nor does the statute require that perpetrators of international terrorism rely exclusively on fear and

intimidation, or exclude acts solely because they are aimed at military or political dominance. Rather, the statute speaks broadly of "violent acts" or "acts dangerous to human life." *See* 18 U.S.C. § 2331(1)(A). And the statute encompasses not only acts that appear intended "to intimidate or coerce a civilian population," *id.* § 2331(1)(B)(i), but also acts that appear intended "to influence the policy of a government by intimidation or coercion" or "to affect the conduct of a government by mass destruction, assassination, or kidnaping," *id.* § 2331(1)(B)(ii)-(iii).

To the extent Grenier offers opinions about the meaning of the ATA, they are impermissible legal opinions that "encroach upon the court's duty to instruct on the law." *See Bilzerian*, 926 F.2d at 1294. Even if characterized as non-legal, Grenier's opinions would not assist the factfinder because they invite the application of a terrorism-versus-insurgency dichotomy that is contrary to the ATA's statutory definition of "international terrorism."

Defendant argues that Grenier is not offering a legal interpretation of the ATA but rather is drawing from his extensive counterterrorism experience to explain how terrorism and insurgency are understood in his field. That argument is unpersuasive. The meaning of terrorism among counterterrorism experts is not only irrelevant but also impermissible to the extent that meaning is inconsistent with Congress's definition of the term in the ATA. By attempting to define terrorism to exclude combatant-directed insurgent violence, Grenier's framework is at odds with the statutory inquiry the factfinder must undertake. The challenged opinions are not helpful and thus are excluded at summary judgment and at trial under Rules 702 and 401.

The same reasoning applies to Grenier's use of governmental terrorism statistics and casualty classifications to corroborate his distinction. That information may reflect how particular governmental entities or the military categorize casualties for their own purposes, but

it does not alter the governing definition under the ATA. Grenier's reliance on these sources does not render his terrorism-versus-insurgency framework relevant or helpful, either to the Court as arbiter of the law or to the jury as finder of fact.

In the event Grenier's testimony is struck, Defendant seeks to preclude Plaintiffs' experts from opining that the at-issue attacks were acts of international terrorism. That request is granted to the extent any expert opinion purports to define the terms "international terrorism" or "terrorism." However, any application of the facts to the ATA's definition is permissible. It is assumed that Plaintiff will not present testimony to rebut Grenier's stricken opinions, as such testimony is moot.

**C. DCAS Data**

Plaintiffs move to exclude the DCAS Data, which classifies the at-issue servicemember deaths -- accounting for six of the seven bellwether deaths -- under the casualty category "Killed in Action" rather than "Died of Terrorist Activities." The motion is granted. For purposes of the summary judgment motion, the data is irrelevant and excluded under Rule 401. To the extent the data might have any probative value at trial, that value is substantially outweighed by the danger of confusing the issues and misleading the factfinder under Rule 403.

Under the governing DoD Instruction, DoDI 1300.18, "Killed in Action" and "Died of Terrorist Activities" are mutually exclusive casualty categories that -- like Grenier's excluded opinions -- create an impermissible limitation on the definition of terrorism that is inconsistent with the ATA. A "hostile casualty" is a person who either (1) is the victim of a terrorist activity or (2) becomes a casualty "in action," i.e., as a result of hostile action during combat. DoDI 1300.18 at E2.33 (Dkt. No. 466-1 at 9). The "Killed in Action" category, in turn, applies to a

hostile casualty "other than the victim of a terrorist activity." DoDI 1300.18 at E2.36 (Dkt. No. 466-1 at 9). In other words, the "Killed in Action" category excludes deaths from terrorism.

Defendant contends that the DoD's classification of the at-issue servicemember deaths as "Killed in Action" bears on whether the ATA's international-terrorism element is met because the DoD reached the classifications using a definition of "terrorism" that is substantively similar to that of the ATA. *See* DoDI 1300.18 at E2.53 (Dkt. No. 466-1 at 12). While the definitions are similar, the DoD's classifications do not merely reflect a straightforward application of the terrorism definition. Rather, they result from a classification scheme that treats combat-related deaths as distinct from deaths resulting from terrorist activity. Accordingly, the DCAS Data would not aid the jury in determining whether the six bellwether deaths the DoD classified as "Killed in Action" were victims of "international terrorism" as defined in the ATA. The DCAS Data is therefore excluded both at summary judgment and at trial on grounds of relevance under Rule 401.

The DCAS Data is also excluded at trial under Rule 403. To the extent that the DCAS Data has any probative value -- e.g., by providing information apart from the casualty category -- that value is significantly outweighed by the risk of confusing or misleading the jury about the applicable definition of "international terrorism" under the ATA. Presenting the DoD's classifications to the jury risks suggesting that the categories "Killed in Action" and "Died from Terrorist Activity" are mutually exclusive for purposes of the ATA. Allowing the DCAS Data as evidence of whether Plaintiffs were victims of international terrorism would in effect reintroduce the conceptual distinction advanced by Grenier and rejected above.

### D. BG MacEwen's Opinions

Plaintiffs seek to exclude the opinions of BG MacEwen, who opines on the meaning and significance of the DCAS Data. The motion is granted. Because the DCAS Data is excluded, expert testimony about that data is unnecessary and irrelevant under Rules 702 and 401. Such testimony also runs the same risk of confusion that warrants exclusion of the DCAS Data under Rule 403 as discussed above. The parties shall not present evidence that addresses the DCAS Data at summary judgment or trial.

## III. CONCLUSION

For the reasons stated above, Plaintiffs' motion is **GRANTED in full**. The following are excluded at summary judgment and trial: (1) the opinions stated in paragraphs 25, 41-48, 150 and 151 (bullet 2) of Grenier's Expert Report, including the opinion that the at-issue attacks were the result of an "armed insurgency" rather than "international terrorism," and related deposition testimony; (2) the DCAS Data as defined above and (3) the Expert Report and deposition testimony of BG David MacEwen.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 465.

Dated: October 1, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE